IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

———————————————

Civil Action No: _____

ESTATE OF NANCY CLEVELAND, by and through its personal representative,
ALBERT E. CLEVELAND III; and
ALBERT E. CLEVELAND III, individually;

          Plaintiffs,

vs.

SHERIFF JAMES VAN BEEK, in his official and individual capacities;
CAPTAIN GREGORY VAN WYK, in his official and individual capacities;
UNDERSHERIFF DAN LOYA, in his official and individual capacities,
DEPUTY ANTHONY VALDEZ, in his official and individual capacities,
DEPUTY ANDREW VIGIL, in his official and individual capacities,
DEPUTY O'NEILL, in his official and individual capacities,
EAGLE COUNTY SHERIFF'S OFFICE,
EAGLE COUNTY BOARD OF COMMISSIONERS,
WELLPATH, LLC,
COLORADO WEST REGIONAL MENTAL HEALTH d/b/a MIND SPRINGS HEALTH, INC.,

          Defendants.

---

Keary W. Sawyer (21266)
*Co-Counsel for Plaintiffs*
SAWYER LAW OFFICES, PC
418 College Avenue NE
Grand Rapids, MI 49503
(616) 451-8478

Sean B. Walsh (35141)
*Co-Counsel for Plaintiffs*
LAMPERT & WALSH, LLC
5281 S. Quebec Street
Greenwood Village, CO 80111
(720) 489-5848

---

## COMPLAINT AND JURY DEMAND

---

      NOW COME Plaintiffs, by and through their attorneys, Sawyer Law Offices, P.C. and

Lampert & Walsh, LLC and for their Complaint against the above-named Defendants, state as

follows:

## INTRODUCTION

1. This action seeks damages and justice for the wrongful death of Nancy Annette Cleveland on (date of death) December 7, 2022 as a result of asphyxia (hanging) suicide, while in the custody of Eagle County Sheriff, James Van Beek at the Eagle County Detention Facility (ECDF).

2. That Plaintiff's Decedent Nancy Annette Cleveland was initially incarcerated at the Eagle County Detention Facility (ECDF), bonded out, and then was reincarcerated on October 25, 2022 as a result of drinking-driving and related charges.

3. That upon admission to ECDF, Nancy Annette Cleveland was intoxicated, due to being alcohol dependent, whereupon her attorney, Eric Johnson, had her voluntarily agree to have her bond revoked for her own safety.

4. That upon her initial admission on October 25, 2022, Nancy Annette Cleveland was accompanied by her friend, Daniel Heinze, who expressly advised the ECDF Intake Detention Deputies that Nancy Annette Cleveland was suicidal.

5. Despite the Eagle County Sheriff's Office (ECSO) and ECDF having received prior, expressed actual warnings that Plaintiff's decedent, Nancy Annette Cleveland was suicidal, Sheriff James Van Beek and other Defendants failed to act upon this information and to fulfil their special duty to take reasonable measures to protect and assure the safety of Nancy Annette Cleveland, as a detainee.

6. That the ECSO and ECDF had experienced at least four (4) prior jail suicides by hanging;

   - Rafael Terrazas Macias (1/1/2012)

   - Eric Trottier (1/4/2014)

   - Nathan Simon (8/5/2019)

   - Wilbur Hulliger (9/10/2019)

and one subsequent ECDF suicide by hanging:

- Ian Lockhart (4/13/2023)

and numerous prior attempted suicides and were also aware of the suicide epidemic that existed in Eagle County prior to Nancy Annette Cleveland's death by hanging at ECDF.

7. That multiple, expressed, face-to-face and written notices were provided to ECSO and its various deputies and Command Staff which included that Nancy Annette Cleveland was a suicide risk, depressed, alcohol addicted, and had mental health issues.

8. That in a letter written by Nancy Cleveland on November 18, 2022, while in custody; and intercepted and read by Detention Deputies Anthony Valdez and Andrew Vigil, Nancy Cleveland stated that she was going to kill herself before her next court date of December 6, 2022.

9. Specifically, Detention Deputy Anthony Valdez and Detention Deputy Andrew Vigil, both received direct information that Nancy Cleveland was a suicide risk but made an independent, conscious, unqualified and indifferent decision not to act on that information by initiating suicide prevention measures and on information and belief did inform Supervisory/Command Staff of Nancy Cleveland's suicidal condition.

10. That Nancy Annette Cleveland's emails and texts were also screened, monitored, and recorded by ECDF staff and were also compelling indicators of her suicidal intentions, including the following:

- November 7, 2022      "Hi I'm so depressed today.  I wish I didn't fuck up so bad.  Time is so slow here…"

- November 9, 2022      "…I'm so sad here now."

- November 11, 2022    "I do. I need to show you guys that wasn't Nancy and that I'm going to get back to her or die."

- November 10, 2022     "I don't know why i am trying anymore…I feel so down right now.  What the point anymore."

- November 13, 2022     "…It makes me sad and depressed…Im not sure how much more I can take being in here. Thinking about what going to happen to me. I have a feel its going to be real bad."

- November 13, 2022     "Why did I let this happen to me.  I don't think I can go on in here. I wanted to die after I got the first dui and was making a plan to."

    ***

    "This is why I feel and did before coming to jail that there is no reason to keep living."

- November 17, 2022     "Im very depressed and have not heard anything. Im afraid to call Erik, for it might not be good news."

- November 18, 2022     "But some of us want to die, I guess that's what you're opting for." *(from Robert Gurule)*

- November 18, 2022     "Yes, I know Im going to be sent to prison."

- November 19, 2022     "I need help with my anxiety and depression prison won't help…"

- November 20, 2022     "Im deeply depressed and not eating much…"

- November 22, 2022     "…I am having such a hard time with everything and want it to end.  Can you send me a copy of the will before you leave for thanksgiving?"

- November 28, 2022     "…I am ok, very depressed."
    ***
    "…I wish I wasn't alive right now.  Im pretty sure they're sending me to prison and I am so afraid to here the news."

- December 1, 2022     "I guess you are going away for a long time." *(from Robert Gurule)*
    ***
    "Hey I am feeling really bad and I just talked to Robert which made me feel worse."

11. That on December 2, 2022 at 11:59, Nancy Cleveland was found hanging in her cell, having tied a bedsheet around her neck and affixing the sheet to the top bed – high tie-off.  The Eagle County Coroner's Office found cause of death, "asphyxiation;" consistent with suicide by hanging.

12. That at ECDF intake, the suicide "screening" was defective, incompetent, incomplete and not undertaken by a qualified mental health professional (QMHP).

13. That Eagle County, through the Eagle County Board of Commissioners (ECBC) had contracted with Wellpath, LLC to undertake mental health-suicide screening and prevention at the ECDF.

14. That after ECDF intake, detainee, Nancy Cleveland, was placed in the general population at ECDF, in a single-cell, with bedsheets, high tie off, and without any suicide precautions being undertaken.

15. That the services provided under the contract with Wellpath, LLC were systematically defective due to Wellpath, LLC's policies, customs, and practices which were driven by profit motive.

16. Despite jail suicides by hanging being the leading cause of death in jails by incarcerated detainees, Eagle County Sheriff, James Van Beek, had remained expressly and intentionally indifferent to this known risk.  In the course of reporting several previous suicides, in September 2019 Sheriff Van Beek wrote publicly, in related part;

> "…there is a balance between measuring someone's tendency towards self-harm and their right to privacy. During incarceration people still need respect."
>
> \*            \*            \*
>
> "…[There is]…a balance between securing the jail from any implements which might be used for self-harm, and consideration that even while in detention, it is thoughtful to include such comforts as sheets."

17. This lawsuit is filed to expose the intentionally indifferent pattern of course of conduct and the systematic failures of ECSO, ECDF, Wellpath, LLC, ECBC, Mind Springs, and the self-serving, reckless and indifferent conduct of Sheriff James Van Beek, his command staff, deputies, and PR agent, and to prevent further needless deaths, to bring transparency, obtain justice for Nancy Cleveland, and obtain compensation for this needless and tragic loss.

## PARTIES

**Plaintiffs:**

18. That Plaintiff, The Estate of Nancy Cleveland, is a duly filed Estate, in good standing, in Probate in Eagle County, Colorado for which Albert E. Cleveland III is the Personal Representative.

19. That Plaintiff, Albert E. Cleveland III, is the natural father and legal heir of Nancy Cleveland (deceased) and at all times relevant to matters complained of herein, was and is a resident of Murrel's Inlet, South Carolina.

**Defendants:**

20. At all times relevant to the subject matter of this litigation, Defendant James Van Beek was a citizen of the United States and a resident of the State of Colorado.

21. At all times relevant to federal claims, Defendant James Van Beek was acting under the color of state law in his capacity as the Sheriff of Eagle County, Colorado.

22. At all times relevant to federal claims, Defendant Captain Gregory VanWyk was a citizen of the United States and a resident of the State of Colorado and was acting under the color of state law in his capacity as Captain in charge of the Eagle County Detention Facility (ECDF) and employed by the Eagle County Sheriff's Office (ECSO).

23. At all times relevant to federal claims, Defendant Dan Loya was a citizen of the United States and a resident of the State of Colorado and employed as Undersheriff of Eagle County, Colorado and was acting under the color of state law in his capacity as Undersheriff.

24. At all times relevant to the subject matter of this litigation, Defendant Detention Deputy Anthony Valdez was a citizen of the United States and a resident of the State of Colorado.

25. At all times Defendant Detention Deputy Anthony Valdez was acting under the color of state law (with the exception of willful and wanton misconduct) in his capacity as a Deputy Sheriff employed by the Eagle County Sheriff's Office.

26. At all times relevant to the subject matter of this litigation, Defendant Detention Deputy Andrew Vigil was a citizen of the United States and a resident of the State of Colorado.

27. At all times Defendant Detention Deputy Andrew Vigil was acting under the color of state law (with the exception of willful and wanton misconduct) in his capacity as Deputy Sheriff employed by the Eagle County Sheriff's Office.

28. At all times relevant to the subject matter of this litigation, Defendant Detention Deputy O'Neill was a citizen of the United States and a resident of the State of Colorado.

29. At all times Defendant Detention Deputy O'Neill was acting under the color of state law (with the exception of willful and wanton misconduct) in his capacity as a Deputy Sheriff employed by the Eagle County Sheriff's Office.

30. At all times relevant to the subject matter of this litigation, Defendant Wellpath LLC, was a Delaware, foreign, limited liability company also d/b/a Wellpath Holdings, Inc., Correct Care Solutions, LLC and various other names and entities) (hereinafter referred to as Defendant "Wellpath, LLC") registered in good standing in the State of Colorado and was attempting to act within the course and scope of a contract with the Defendant Eagle County Board of

Commissioners (ECBC) to provide healthcare services, including medical and mental health, for the Eagle County Sheriff's Office and Eagle County Detention Facility (ECDF).

31. At all times relevant to the subject matter of this litigation, Defendant Colorado West Regional Health was a mental health corporation and doing business as Mind Springs Health, Inc., (hereinafter referred to as "Mind Springs") registered in good standing in the State of Colorado and was attempting to act within the course and scope of a contract with the Defendant Eagle County Board of Commissioners (ECBC) to provide mental health services and training at the Eagle County Detention Facility (ECDF).

32. At all times relevant to the subject matter of this litigation, Defendant Eagle County Board of Commissioners (ECBC) is the statutory governing body of Eagle County; a political subdivision of the State of Colorado, established by the laws and Constitution of the State of Colorado, and as such had a duty to supervise ECDF per CRS § 17-26-126 and to fund policies and procedures of the Eagle County Sheriff's Office (ECSO).

## JURISDICTION AND VENUE

33. As authorized by Article III § 2 of the United States Constitution and set forth in 28 U.S.C. § 1331, this Court has subject matter jurisdiction over all claims asserted herein based on the Constitution and laws of the United States of America, and the State of Colorado, including the Fourteenth Amendments of the United States Constitution, and from, *inter alia*, Defendants' deliberately indifferent supervision and custody of a mentally "at-risk" detainees.  Plaintiffs seek relief based on various claims for violations of 42 U.S.C. § 1983 ("Civil Rights Act").   Furthermore, subject matter jurisdiction is conferred on this court by 28 U.S.C. §1343(a)(4) for the reasons that Plaintiffs' claims under the Civil Rights Act seek to recover damages under an Act of Congress providing for the protection of Civil Rights.

34. This Court may also exercise supplemental subject matter jurisdiction over the state-law claims raised in this action pursuant to 28 U.S.C. § 1367(a) because these claims are also related to the violations of the Fourteenth Amendment and the Civil Rights Act that they form part of the same case or controversy. Specifically, Plaintiffs' claims of Defendants' negligence and willful, wanton, and reckless misconduct under Colorado State Law and Colorado's Wrongful Death Statute, C.R.S. § 13-21-202, et. seq., arise from the same facts that form the basis of Plaintiffs' Federal Law claims.

35. This Court has personal jurisdiction over all parties pursuant to Fed. R. Civ. P. 4(k)(1)(A) and 28 U.S.C. § 1391(a) because all Defendants are subject to the jurisdiction of the Colorado state courts and [were] properly served a summons. Defendants' conduct giving rise to these claims occurred in the State and District of Colorado, specifically Eagle County, Colorado.

36. Most of the conduct giving rise to these claims occurred in Eagle County, Colorado.

37. This Court may also exercise supplemental subject matter jurisdiction over the state-law claims raised in this action pursuant to 28 U.S.C. § 1331 and 1367(a).

38. Defendants' customs, policies, practices, and/or procedures caused the deprivations of Plaintiffs' constitutional rights.  In accordance with § 24-10-109, C.R.S., Defendants were provided with notice of Plaintiffs' claims via certified mail sent on August 18, 2023. Pursuant to the Colorado Governmental Immunities Act, immunity from suit for various wrongdoings is waived pursuant to C.R.S. § 24-10-106(1)(b) and (c), C.R.S. § 24-10-106(1.5)(a) and (b), and C.R.S. § 24-10-106(2) and (3).

39. At all times relevant to the matters complained of herein and specifically from October 25, 2022 thru December 7, 2022, the individual Defendants were residents of and domiciled in the State of Colorado.

40. At all times relevant to the matters complained of herein and specifically from the initial incarceration of Plaintiff's Decedent, Nancy Annette Cleveland on October 25, 2022 incarceration thru her death on December 7, 2022, Defendant entities had a principal place of business exercising authority and control over the entity in the State and District of Colorado.

41. Venue is properly laid in this District Court pursuant to 28 U.S.C. § 1331 and 1343 and pursuant to 28 U.S.C. § 1391(b)(1) because all Defendants reside in the state of Colorado according to 28 U.S.C. § 1391(c)(1) and (c)(2), as the individuals are domiciled in Colorado and the municipal entities are subject to this Court's personal jurisdiction. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in the State of Colorado.

42. Jurisdiction supporting Plaintiffs' claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

## FACTUAL ALLEGATIONS

### The ESCO had Actual Prior Notice of Nancy Cleveland being a Suicide Risk

43. On October 25, 2022, the ECSO received custody of Plaintiff's Decedent, Nancy Annette Cleveland.  At that time, date, and place, the intake deputies and staff at ECDF were expressly warned by Daniel Heinze that Nancy Annette Cleveland was suicidal and to undertake appropriate precautions.

### The ECDF Intake Did Not Meet the Standard of Care and Violated Nancy Cleveland's Constitutional Rights

44. At ECDF Intake on October 25, 2022 at approximately 9:59 hours, Nancy Cleveland may have been read a "screening officer" questionnaire by ECSO Deputy O'Neill.

45. That on or about October 25, 2022 at approximately 10:30 hours, a second intake screening entitled "Receiving Screening with Mental Health" was filled out by Wellpath, LLC employee, Jane Doe.

46. That neither Defendant Deputy O'Neill nor Jane Doe met the qualifications to be considered a Qualified Mental Health Professional (QMHP) per NCCHC, J-C-01 Credentials.

47. That none of the information regarding Nancy Cleveland's suicidal behavior on October 25, 2022 and November 18, 2022 (which clearly met the definition of "non-acute suicidal" per standard J-B-05 Suicide Prevention and Intervention, National Commission on Corrective Health Care, 2018) were communicated to the ECDF intake personnel by ECSO responding and arresting deputies/officers.

48. That the "Receiving Screening with Mental Health" form filled out by Defendant O'Neill did not designate "cleared for mental health."

49. That at all times relevant to the matters complained of herein, Eagle County, through the Eagle County Board of Commissioners had a contract with Wellpath, LLC for the purpose of providing QMHP's to undertake mental health/suicide prevention and screening.

50. That at all times relevant to the matters complained of herein, Eagle County, through the Eagle County Board of Commissioners had a contract with Colorado West Regional Mental Health d/b/a Mind Springs Health, Inc. ("Mind Springs") for the purpose of providing QMHP's to undertake mental health/suicide prevention and screening.

51. That Defendant Mind Springs had an employee, Counselor John Doe at ECDF premises for the purpose of fulfilling its contractual obligations(s) to consult, supervise, manage, screen, and assess arrestees, including detainees, such as Nancy Cleveland; and to train ECDF and ECSO personnel.

52. That Defendant Mind Springs' employee(s) failed to follow up and evaluate and address Nancy Cleveland's mental health / suicide risk in a competent manner.

53. That despite actual knowledge of the suicide risk to Nancy Cleveland; ECSO and ECDF intake and staff placed Nancy Cleveland in the general population in a single cell (1E-4) with no suicide-prevention precautions.

54. No interim steps were taken, at any time, to maintain Nancy Cleveland's safety nor was there any type of suicide evaluation process or continuing mental health assessment by a QMHP.

55. Detainee, Nancy Cleveland, suffered from biopolar, mental health features and required therapeutic levels of medication to stabilize and manage those features which include suicide risk.

56. That Defendants ECDF and its command staff failed to implement any systemic check/watch of inmates, such as Plaintiff's Decedent.

57. That Nancy Cleveland was confined in a single-person cell (IE-4) with a high top bunk tie-off, easily accessible to facilitate Nancy's subsequent suicide by hanging.

58. Nancy Cleveland was provided bedsheets and allowed to retain her cloth clothing, known to be common items used by inmates to commit suicide by hanging.

59. There was a surveillance camera aimed at and recording Nancy Cleveland's cell and in a position to detect suicidal actions but it was not being monitored but would have revealed Nancy's suicide by hanging.

60. On December 2, 2022, Nancy Cleveland remained unsupervised and not checked on for over four (4) hours until she was eventually discovered hanging in her cell.

61. That neither ECSO nor ECDF had a current, up-to-date, written suicide prevention policy to screen and assess non-acute suicide, detainees on a continuing basis by qualified personnel; in the alternative, if such a policy existed; it was not implemented or followed.

62. Sheriff Van Beek addressed a number of jail suicides that had occurred at ECDF and, in a self-serving dialogue, published a number of months before Nancy Cleveland's death, that in part, states;

> "Those who remain realize that the determination of the deceased far surpassed what anyone else could have done differently"
>
> *   *   *
>
> "We relive details over and over, trying for a different outcome, which of course, is not possible"
>
> *   *   *
>
> "There has been a rise in suicides across Eagle County, and we were shocked when two occurred in our jail this month.  There are many factors to consider in running a detention facility.  There is a balance between measuring someone's tendency towards self-harm and their right of privacy.  During incarceration, people still deserve respect."
>
> *   *   *
>
> "There is a continual need to establish a balance between securing the jail from any implements which might be used for self-harm and consideration that even while in detention, it is thoughtful to include such comforts as sheets and certain items of clothing to maintain a degree of normalcy, which is an important element of the rehabilitation process.  As with many law enforcement agencies across the country, we are always seeking new approaches."
>
> *   *   *
>
> "…we must also face the fact that many who are intent on committing suicide have learned to hide their symptoms for fear of being stopped."

63. That the ECDF is a jail within the meaning of C.R.S. § 24-10-106(1)(b).

64. That the ECDF was a public building within the meaning of C.R.S. § 24-10-106(1)(c).

65. Defendant Van Beek was responsible for training and supervising all named Defendants and other employees of the Eagle County Sheriff's Department working at the jail (ECDF), for setting jail policy and for directing the overall management of the jail (ECDF), and for taking all reasonable measures to insured the health and welfare of all persons detained in the Eagle County Detention Facility including the supervision of contract performance.

## COUNT I
### 42 U.S.C. 1983 – Violation of Constitutional Rights: Fourteenth Amendment
### Defendant James Van Beek in his official capacity as Sheriff

66. That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

67. That as Sheriff of the ECSO and operator of the ECDF, Sheriff Van Beek possessed final authority to establish policy that governed the actions of other officers and that resulted in the violation of Nancy Cleveland's Constitutional Rights.

68. That acting under the color and authority of state law, Sheriff James Van Beek owed a clearly established legal and Constitutional duty to Plaintiff's Decedent, and other similarly situated pre-conviction detainees lodged in ECDF to take reasonable measures to guarantee their safety.

69. That by actual and/or constructive notice, Defendant Sheriff James Van Beek knew or should have known of the obvious substantial risk of serious harm which the totality of circumstances presented to detainee, Nancy Annette Cleveland, as a potentially suicidal detainee lodged at ECDF; including, but not limited to the following acts and omissions:

   a) Failure to implement an effective suicide prevention policy,

   b) Failure to instruct, train, and supervise his command and staff regarding suicide prevention, including monitoring surveillance videos including that on cell 1E4.

   c) Failure to properly instruct and train ECSO/ECDF on how to report and respond to obvious suicide risk factors and statements of intention to commit

suicide and other suicide indicators by seeking mental health intervention or at least fully inform ECDF intake of the suicide risk,

d) Failure to require that the QMHP doing the screening follows up with sensitive background questioning and with other community sources; such as family, friends, ECSO and mental health databases.

e) Failure of record keeping – to maintain a suicide/mental health database and information system.

f) Failing to assure that proper, effective, and sensitive mental health screening methods were used to determine whether a detained individual required suicide prevention precautions.

g) Failure to require that a suicide/mental health assessment be done by a QMHP in a timely manner.

h) Failure to have an ongoing suicide assessment and prevention program which incorporates continuous quality improvement.

i) Failure to place Nancy Cleveland on any type of suicide prevention measures after having been expressing warned of her suicidal intentions on several occasions.

j) By placing Nancy Cleveland in the general jail population without any suicide preventative measures.

k) By placing Nancy Cleveland in a single person cell (1E4) with high accessible tie-off points on the upper bunk.

l) By providing bed sheets, commonly known to be used by inmates to facilitate suicide by hanging.

m) By failing to provide any meaningful or systematic watch policy, staff supervision, including head counts and checking on inmates every 15 to 30 minutes.

n) By failing to train and instruct ECDF staff and jailers on mental health - suicidal detention and preventions, including talking with other inmates.

o) By failing to warn, inform, and instruct other inmates, family, and visitors to report any signs of despair, depression, or suicidal expressions to staff.

p) Failure to monitor the cell location, such as cell 1E4, by surveillance cameras which were aimed at cell 1E4.

q) Failing to inspect and correct correctional building defects and hazards, including high tie-offs inside the cell, which presented a dangerous structural hanging opportunity and hazard.

r) By failing to implement suicide prevention measures after having direct knowledge of Nancy Cleveland's suicide intentions as stated in her screened November 18, 2022 letter and numerous screened emails/texts and as reported by Daniel Heinze.

70. That Defendant Sheriff James Van Beek was deliberately indifferent to the above stated acts and omissions which constituted substantial risks of serious harm to which Nancy Cleveland was subjected.

71. That as a direct and proximate result of Defendant Sheriff Van Beek's deliberate indifference to the substantial risk of serious harm presented, Nancy Cleveland was deprived of her life under color of state law in violation of the Fourteenth Amendment of the United States Constitution and violation of 42 U.S.C. 1983.

72. That as a direct and proximate result of Defendant's deliberate indifferences as above stated, Plaintiff's Decedent has suffered despair, anxiety, emotional trauma, pain and suffering, loss of life (death); and her survivors have sustained damages including loss of their daughter's love, society, companionship, emotional trauma, support, and that said losses are permanent and will continue into the future.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

## COUNT II
## NEGLIGENCE – WILLFUL WANTON
## (Individually, James Van Beek)
## (State)

73. That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

74. That Defendant James Van Beek was Sheriff of Eagle County, Colorado at all times relevant to the matters herein complained.

75. That as Sheriff of Eagle County, Defendant James Van Beek had a statutory duty per C.R.S. § 30-10-511 to be in charge of the jail of Eagle County (ECDF) and of the prisoners including detainees, such as Plaintiff's decedent, and to supervise them himself or through deputies or jailers.

76. That as a duly elected Sheriff charged with the duty of overseeing the operation of the jail (ECDF), Sheriff James Van Beek knew or should have known that jail suicides are the leading cause of inmate deaths and that a vast majority of jail suicides are committed by hanging.

77. That under both statutory and common law of the State of Colorado, Defendant James Van Beek owed a duty to Plaintiff's decedent, Nancy Cleveland, and other incarcerated detainees to take reasonable measures to assure their safety while in custody.

78. That the aforementioned duties were breached and Defendant Van Beek was negligent and grossly, willfully, and wantonly negligent in the following particulars, including but not limited to the allegations previously stated in Count I, Paragraph 69 (a) thru (r) of this Complaint.

79. That Defendant Van Beek was on notice of prior recent suicides in the ECDF, including that of Nathan Simon.  Defendant Van Beek knew on multiple occasions, while Nancy Annette Cleveland was in custody at the ECDF, that she was suicidal based on the reports of Daniel Heinze and the direct statements and writings of Nancy Annette Cleveland made to detention facility personnel.  Despite this specific knowledge, Defendant Van Beek was willful and wanton in his conduct and ignored Nancy Annette Cleveland's statutory and Constitutional right to medical attention and/or mental health treatment.

80. That as an individual, and for Defendant James Van Beek's own purpose, he chose to ignore the history of prior suicides by hanging at ECDF and conceal the number of suicide attempts without implementing effective suicide prevention and screening measures.

81. That as a direct and proximate result of Defendant James Van Beek's negligence, gross, willful, wanton negligence as above stated, Plaintiff's Decedent has suffered despair, anxiety, emotional trauma, pain and suffering, loss of life (death); and her survivors have sustained damages including loss of their daughter's love, society, companionship, emotional trauma, support, and that said losses are permanent and will continue into the future.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

### COUNT III
### Negligent Operation of a Jail /  Dangerous Condition of Jail
### Per C.R.S. §24-10-106 et. seq. / Waiver of Sovereign Immunity
### Sheriff James VanBeek

82. That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

83. That Defendant Sheriff James Van Beek is responsible for the operational management of the ECSO and ECDF.

84. That Defendant Sheriff James Van Beek has a statutory duty to conduct the operations of the jail (ECDF) in a reasonable and safe manner which assures the safety of inmates and pre-conviction detainees under his control (per C.R.S. § 24-10-106(1.5)(c)), such as Plaintiff's Decedent, Nancy Cleveland per C.R.S. § 24-10-106(1)(b); and to also be sure that the jail (ECDF) is free from dangerous conditions per C.R.S. § 24-10-106(1)(c) and (e).

85. That Defendant Sheriff James Van Beek breached his statutory and common law duties and standards to Plaintiffs Decedent and was negligent in the following particulars:

<u>(Operations)</u>
<u>C.R.S. § 24-10-106(b)</u>

a)  Failure to implement any of the suicide prevention measures previously stated in Count I, Paragraph 69 (a) thru (r) of this Complaint.

b)  Failure to instruct, train, and supervise his command staff regarding suicide prevention, including monitoring continuing surveillance systems, including on cell 1E4.

c)  Failure to have routine staff supervision and a watch policy for all inmates.

<u>(Dangerous Condition of Jail, a Public Building</u>)
<u>C.R.S. 24-10-106(c)</u>

d)  Failure to inspect and correct or implement remedial measures regarding the structural hazards presented by high tie-offs (top bunk) the inside of the cell, which presented an obvious hanging opportunity.

e)  Failure to safeguard detainees by providing them means to harm themselves while detained in a jail cell.

86. That as a direct and proximate result of Defendant James Van Beek's negligence and gross negligence as above stated, Plaintiff's Decedent has suffered despair, anxiety, emotional trauma, pain and suffering, loss of life (death); and her survivors have sustained damages including loss of their daughter's love, society, companionship, emotional trauma, support, and that said losses are permanent and will continue into the future.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

**COUNT IV**
**42 U.S.C. 1983 – Violation of Constitutional Rights**
**Defendant Undersheriff Dan Loya in his Official Capacity**

87. That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

88. That acting under the color and authority of state law, Undersheriff Dan Loya owed a clearly established legal and Constitutional duty to Plaintiff's Decedent, and other similarly situated detainees lodged in ECDF to take reasonable measures to assure their safety.

89. That by actual and/or constructive notice, Defendant Undersheriff Dan Loya knew or should have known of the obvious substantial risk of serious harm which the totality of circumstances presented to detainee, Nancy Cleveland, as a potentially suicidal inmate lodged at ECDF; including, but not limited to the following acts and omissions as previously stated in Count I, Paragraph 69 (a) thru (r) of this Complaint.

90. That Defendant Undersheriff Dan Loya, under the color of state law, and his own authority, was deliberately indifferent to the known constituted right of Nancy Cleveland to adequate medical and mental health care causing substantial risks of serious harm to which Nancy Cleveland was subjected.

91. That as a direct and proximate result of Defendant Undersheriff Dan Loya's deliberate indifference to the substantial risk of serious harm presented, Nancy Cleveland was deprived of her life under color of state law in violation of the Fourteenth Amendment of the United States Constitution and violation of 42 U.S.C. 1983.

92. That as a direct and proximate result of Defendant's deliberate indifferences as above stated, Plaintiff's Decedent has suffered despair, anxiety, emotional trauma, pain and suffering, loss of life (death); and her survivors have sustained damages including loss of their daughter's

love, society, companionship, emotional trauma, support, and that said losses are permanent and will continue into the future.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

**COUNT V**
**NEGLIGENCE – WILLFUL WANTON**
**(Individually, Dan Loya)**
**(State)**

93. That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

94. Defendant Dan Loya at all times relevant to the matters herein complained of was the Undersheriff of Eagle County, Colorado.

95. That as Undersheriff of Eagle County, Defendant Dan Loya was delegated and assumed a statutory duty per C.R.S. § 30-10-511 to have charge of and manage the jail of Eagle County (ECDF) and the prisoners including detainees, such as Plaintiff's decedent, and to supervise them himself or through deputies or jailers.

96. That Defendant Dan Loya assumed the duty of overseeing the operation of the jail (ECDF) and Defendant Dan Loya knew or should have known that jail suicides are the leading cause of inmate deaths and that a vast majority of jail suicides are committed by hanging.

97. That under both statutory and common law of the State of Colorado, Defendant Dan Loya owed a duty to Plaintiff's decedent, Nancy Cleveland, and other detainees to take reasonable measures to assure their safety while in custody.

98. That Defendant Loya was on notice of prior recent suicides in the ECDF, including that of Nathan Simon. Defendant Loya knew on multiple occasions, while Nancy Annette

Cleveland was in custody at the ECDF, that she was suicidal based on the express statements of Daniel Heinze and the direct statements, writings and actions of Nancy Annette Cleveland made in writing and read by detention facility personnel. Despite this specific knowledge, this Defendant was willful and wanton in their conduct and ignored Nancy Annette Cleveland's statutory and Constitutional rights to medical attention and/or mental health treatment.

99. That the aforementioned duties were breached and Defendant Dan Loya was negligent and grossly, willfully, and wantonly negligent in the following particulars, including but not limited to the allegations previously stated in Count I, Paragraph 69 (a) thru (r) of this Complaint.

100. That as an individual, and for Defendant Dan Loya's own purpose, he chose to ignore the history of prior suicides by hanging at ECDF without implementing effective suicide prevention measures.

101. That as a direct and proximate result of Defendant Dan Loya's negligence, gross, willful, wanton negligence as above stated, Plaintiff's Decedent has suffered despair, anxiety, emotional trauma, pain and suffering, loss of life (death); and her survivors have sustained damages including loss of their daughter's love, society, companionship, emotional trauma, support, and that said losses are permanent and will continue into the future.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

## COUNT VI
### Negligent Operation of a Jail / Dangerous Condition of Jail
### Per C.R.S. § 24-10-106 et. seq. / Waiver of Sovereign Immunity
### Undersheriff Dan Loya
### (State)

102.  That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

103.  That Undersheriff Dan Loya is on the "Command Staff" of the ECSO and as such is responsible for the operational management of the ECSO and supervision of the ECDF.

104.  That Undersheriff Dan Loya has a statutory duty to conduct the operations of the jail (ECDF) in a reasonable and safe manner and a manner which assures the safety of the inmates and pre-conviction detainees under his control, such as Plaintiff's Decedent, Nancy Cleveland.

105.  That Defendant Dan Loya breached and violated his statutory and common law duties to Plaintiff's Decedent and was negligent in the following particulars:

(Operations)
C.R.S. § 24-10-106(b)

a)  Failure to implement any of the suicide prevention measures previously stated in Count I, Paragraph 69 (a) thru (r) of this Complaint.

b)  Failure to instruct, train, and supervise his command staff and deputies regarding suicide prevention.

c)  Failure to have routine and supplemental staff supervision and a watch policy for all inmates.

<u>(Dangerous Condition of Jail, a Public Building)</u>
<u>C.R.S. § 24-10-106(c)</u>

d)  Failure to inspect and correct or implement remedial measures regarding the structural hazards presented by high tie-offs (top bunk) inside of the cell, which presented an obvious hanging opportunity.

e)  Failure to monitor the existing video surveillance system for cell 1E4, which could have been readily observed by staff.

f)  Failure to safeguard detainees by providing them means to harm themselves while detained in a jail cell.

106.  That Defendant Dan Loya has a statutory duty to conduct the operations of the jail (ECDF) in a reasonable and safe manner which assures the safety of inmates and detainees under his control (per C.R.S. § 24-10-106(1.5)(c)), such as Plaintiff's Decedent, Nancy Cleveland per C.R.S. § 24-10-106(1)(b); and to also be sure that the jail (ECDF) is free from dangerous conditions per C.R.S. § 24-10-106(1)(c) and (e).

107.  That Defendant Loya was on notice of prior recent suicides in the ECDF, including that of Nathan Simon. Defendant Loya knew on multiple occasions, while Nancy Annette Cleveland was in custody at the ECDF, that she was suicidal based on the express warning of Daniel Heinze, and the direct statements, writings, and actions by Nancy Annette Cleveland made to both officers and read by detention facility personnel.  Despite this specific knowledge, this Defendant was willful and wanton in their conduct and ignored Nancy Annette Cleveland's § 1983 Constitutionally recognized rights to medical attention and/or mental health treatment.

108.  That as a direct and proximate result of Defendant Undersheriff Dan Loya's negligence and gross negligence and reckless conduct as above stated, Plaintiff's Decedent has

suffered despair, anxiety, emotional trauma, pain and suffering, loss of life (death); and her survivors have sustained damages including loss of their daughter's love, society, companionship, emotional trauma, support, and that said losses are permanent and will continue into the future.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

### COUNT VII
### 42 U.S.C. 1983 – Violation of Constitutional Rights
### Defendant Captain Gregory Van Wyk in his Official Capacity

109.  That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

110.  That acting under the color and authority of state law, Captain Gregory Van Wyk (hereinafter referred to as Defendant Van Wyk) owed a clearly established legal duty to Plaintiff's Decedent, and other similarly situated pre-conviction detainees lodged in ECDF to take reasonable measures to assure their safety and provide for their medical and mental care.

111.  That by actual and/or constructive notice, Defendant Captain Van Wyk knew or should have known of the obvious substantial risk of serious harm which the totality of circumstances presented to detainee, Nancy Cleveland, as a potentially suicidal inmate lodged at ECDF; including, but not limited to the following acts and omissions as previously stated in Count I, Paragraph 69 (a) thru (r) of this Complaint.

112. That Defendant Captain Van Wyk, under the color of state law, and his own authority, was deliberately indifferent to the above stated substantial risks of serious harm to which Nancy Cleveland was subjected.

113. That as a direct and proximate result of Defendant Captain Van Wyk's deliberate indifference to the substantial risk of serious harm presented, Nancy Cleveland was deprived of her life under color of state law in violation of the Fourteenth Amendment of the United States Constitution and violation of 42 U.S.C. 1983.

114. That as a direct and proximate result of Defendant Captain Van Wyk's deliberate indifferences as above stated, Plaintiff's Decedent has suffered despair, anxiety, emotional trauma, pain and suffering, loss of life (death); and her survivors have sustained damages including loss of their daughter's love, society, companionship, emotional trauma, support, and that said losses are permanent and will continue into the future.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

## COUNT VIII
## NEGLIGENCE – WILLFUL WANTON
### (Individually, Gregory Van Wyk)

115. That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

116. That Defendant Van Wyk had a statutory duty per C.R.S. § 30-10-511 to have charge of the jail of Eagle County (ECDF) and of the prisoners including detainees, such as Plaintiff's decedent, and to supervise them himself or through deputies or jailers.

117.   That Defendant Van Wyk knew or should have known that jail suicides are the leading cause of inmate deaths and that a vast majority of jail suicides are committed by hanging.

118.   That under both statutory and common law of the State of Colorado, Defendant Van Wyk owed a duty to Plaintiff's decedent, Nancy Cleveland, and other incarcerated detainees to take all reasonable measures to assure their safety while in custody, including the known Constitutional right to medical and mental health care.

119.   That the aforementioned duties were breached by Defendant Van Wyk's negligence and being grossly, willfully, and wantonly negligent in the following particulars, including but not limited to the allegations previously stated in Count I, Paragraph 69 (a) thru (r) of this Complaint.

120.   That as an individual, and for Defendant Van Wyk's own purpose, he chose to ignore the history of prior suicides by hanging at ECDF and further failed to implement an effective suicide prevention policy and measures.

121.   That Defendant Van Wyk was on notice of prior recent suicides in the ECDF, specifically that of Nathan Simon. Defendant Van Wyk knew on multiple occasions, while Nancy Annette Cleveland was in custody at the ECDF, that she was suicidal based on the reports of Daniel Heinze, and the direct statements, writings and actions by Nancy Annette Cleveland made to both officers and read by detention facility personnel.  Despite this specific knowledge, Defendant Van Wyk was willful and wanton in his conduct and ignored Nancy Annette Cleveland's § 1983 rights to medical attention and/or mental health treatment.

122.   That as a direct and proximate result of Defendant Van Wyk's negligence, gross, willful, wanton negligence as above stated, Plaintiff's Decedent has suffered despair, anxiety,

emotional trauma, pain and suffering, loss of life (death); and her survivors have sustained damages including loss of their daughter's love, society, companionship, emotional trauma, support, and that said losses are permanent and will continue into the future.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant Van Wyk in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

**COUNT IX**
**Negligent Operation of a Jail / Dangerous Condition of Jail**
**Per C.R.S. § 24-10-106 et. seq. / Waiver of Sovereign Immunity**
**Captain Gregory VanWyk**
**(State)**

123. That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

124. That Captain Gregory VanWyk is on the "Command Staff" of the ECSO and as such is responsible for the operational management and oversight of the ECDF.

125. That Captain Gregory VanWyk has a statutory duty per C.R.S § 30-10-511 to conduct the operations of the ECSO and ECDF in a reasonable and safe manner and a manner which assures the safety of the inmates and detainees under his control, such as Plaintiff's Decedent, Nancy Cleveland.

126. That Defendant VanWyk breached his statutory and common law duties and standards to Plaintiff's Decedent and were negligent in the following particulars:

(Operations)
C.R.S § 24-10-106(b)

a) Failure to implement any of the suicide prevention measures previously stated in Count I, Paragraph 69 (a) thru (r) of this Complaint.

b) Failure to instruct, train, and supervise his command staff regarding suicide risks, detection, monitoring, and reporting.

c) Failure to have routine staff supervision and watch policy for all inmates.

<u>(Dangerous Condition of Jail, a Public Building)</u>
<u>C.R.S. § 24-10-106(c)</u>

d) Failure to inspect and correct or implement remedial measures regarding the structural hazards presented by high tie-offs (top bunk) inside of the cell, which presented an obvious hanging opportunity.

e) Failure to utilize the available surveillance systems.

f) Failure to safeguard detainees by providing them means to harm themselves while detained in a jail cell.

127. That Defendant Captain Van Wyk has a statutory duty to conduct the operations of the jail (ECDF) in a reasonable and safe manner which would assure the safety of inmates under his control (per C.R.S. § 24-10-106(1.5)(c)), such as Plaintiff's Decedent, Nancy Cleveland per C.R.S. § 24-10-106(1)(b); and to also be sure that the jail (ECDF) is free from dangerous conditions per C.R.S. § 24-10-106(1)(c) and (e).

128. That Defendant Van Wyk was on notice of prior recent suicides in the ECDF, including that of Nathan Simon. Defendant Van Wyk knew on multiple occasions, while Nancy Annette Cleveland was in custody at the ECDF, that she was suicidal based on the express concerns of Daniel Heinze and the direct statements, writings, and actions by Nancy Annette Cleveland made to both officers and detention facility personnel. Despite this specific knowledge, Defendant Van Wyk was willful and wanton in their conduct and ignored Nancy Annette Cleveland's § 1983 Constitutional right to medical attention and/or mental health treatment.

129.  That as a direct and proximate result of Defendant Van Wyk's negligence, gross negligence, and willful and wanton reckless misconduct, as above stated, Plaintiff's Decedent has suffered despair, anxiety, emotional trauma, pain and suffering, loss of life (death); and her survivors have sustained damages including loss of their daughter's love, society, companionship, emotional trauma, support, and that said losses are permanent and will continue into the future.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

### COUNT X
### 42 U.S.C. 1983 – Violation of Constitutional Rights
### Detention Deputy Anthony Valdez in his Official Capacity

130.  That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

131.  That at all times relevant to the matters complained of herein, Defendant Deputy Anthony Valdez was employed by ECSO a Deputy Sheriff and was acting within the scope of his employment and under the authority of state law.

132.  That as a deputy sheriff, Defendant Deputy Anthony Valdez had a duty to take reasonable actions to protect the public and individuals in Eagle County, such as Plaintiff's Decedent, Nancy Cleveland, from known threats, including substantial risks of serious harm presented by suicidal behavior.

133.  That Defendant Deputy Anthony Valdez had previous contact(s) with Nancy Cleveland and he was made aware of concerns about Nancy Cleveland as a suicide risk by screening and reading her outgoing letters, emails, and texts.

134. That in November 2022 thru December 2, 2022, and specifically on November 18, 2022, Defendant Deputy Anthony Valdez read a letter written by Nancy Cleveland stating that she was going to commit suicide before her next court date of December 6, 2022.

135. That Defendant Deputy Anthony Valdez informed Deputy Andrew Vigil of the suicide letter of November 18, 2022 and was told by Deputy Vigil to go talk to Nancy Cleveland about it.

136. That either or both of deputies informed ECSO/ECDF Command Staff of the suicide letter of November 18, 2022 and other suicide expressions contained in Nancy Cleveland's emails and text.

137. In the alternative, due to lack of training and supervision, neither Deputy informed superiors of these suicide communications, and as a result, no suicide prevention measures were implemented.

138. That Defendant Deputy Anthony Valdez was not a QMHP and lacked the education, training, and expertise to unilaterally determine whether or not Nancy Cleveland was potentially suicidal.

139. In the alternative, that Defendant Deputy Anthony Valdez made a conscious choice to not inform ECDF staff that Nancy Cleveland was a suicide risk violated clearly established law and was deliberately indifferent to the known risk of serious harm to Plaintiff's Decedent which the circumstances presented.

140. That as a direct and proximate consequence of Defendant Deputy Anthony Valdez's deliberate indifference to the obvious and known serious risk of harm to Plaintiff's Decedent, Nancy Cleveland, was deprived of her Fourteenth Amendment Constitutional

Rights in violation of 42 U.S.C. 1983 and suffered a suicidal death by hanging; and Plaintiffs suffered damages as stated in this Complaint.

141. That as a direct and proximate result of the aforementioned intentional indifference of Defendant Deputy Anthony Valdez, Plaintiffs have suffered the damages as stated in this Complaint.

WHEREFORE, Plaintiffs request that the finder of fact assess damages as prayed for in this Complaint and against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

<u>**COUNT XI**</u>
<u>**Wrongful Death**</u>
<u>**Willful, Wanton, and Reckless Misconduct**</u>
<u>**Defendant Deputy Anthony Valdez**</u>
<u>**(State)**</u>

142. That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

143. That Defendant Deputy Anthony Valdez made a unilateral, deliberate and intentional decision not to communicate the information he had regarding Nancy Cleveland being a suicide risk to the intake staff at ECDF or his supervisors at ECSO.

144. That Defendant Deputy Anthony Valdez was not a QMHP and lacked the education, training, and expertise to determine whether or not Nancy Cleveland was potentially suicidal.

145. That Defendant Deputy Anthony Valdez's conscious refusal to inform his supervisors or the ECDF intake staff and others in a position to implement suicide prevention precautions, of Nancy Cleveland being a suicide risk, was grossly negligent, willful, wanton and a reckless disregard of the serious risk of harm facing the Plaintiff's Decedent.

146.   That Defendant Deputy Anthony Valdez's willful and wanton disregard for Plaintiff's Decedent's safety and depriving Plaintiff's Decedent of her Constitutional right to medical/mental health care was a direct and proximate cause of Nancy Cleveland's death and Plaintiffs have suffered damages as stated in this Complaint.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

**COUNT XII**
**42 U.S.C. 1983 – Violation of Constitutional Rights**
**Deputy Andrew Vigil in his Official Capacity**

147.   That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

148.   That at all times relevant to the matters complained of herein, Defendant Deputy Andrew Vigil was employed by ECSO/ECDF as a Deputy Sheriff and was acting within the scope of his employment and under the authority of state law.

149.   That after Nancy Cleveland was incarcerated, Defendant Deputy Andrew Vigil had a duty as a deputy sheriff to take reasonable actions to assure the safety of Nancy Cleveland as a detainee.

150.   That on and after November 18, 2022, Defendant Deputy Andrew Vigil was shown a letter written by Nancy Cleveland which expressed her intention to commit suicide before her court date of December 6, 2022.

151.   That Defendant Deputy Andrew Vigil unilaterally and intentionally refused to communicate or inform supervisory staff at the ECDF, that Nancy Cleveland was a suicide risk and to implement the appropriate suicide prevention precautions.

152. That Defendant Deputy Andrew Vigil was not a QMHP and lacked the education, training, and expertise to unilaterally determine whether or not Nancy Cleveland was potentially suicidal.

153. That Defendant Deputy Andrew Vigil made a conscious and intentional choice to not inform ECDF staff that Nancy Cleveland was a suicide risk violated clearly established law and Decedent's Constitutional rights and was intentionally indifferent to the known risk of serious harm to Nancy Cleveland which the circumstances presented.

154. That as a direct and proximate consequence of Defendant Deputy Andrew Vigil's intentional indifference to the obvious and known serious risk of harm to Plaintiff's Decedent, Nancy Cleveland; Nancy was deprived of her Fourteenth Amendment Constitutional rights in violation of 42 U.S.C. 1983 and suffered a suicidal death by hanging.

155. That as a direct and proximate cause of the aforementioned intentional indifference of Defendant Deputy Andrew Vigil, Plaintiffs have suffered the damages as stated in this Complaint.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

**COUNT XIII**
**Wrongful Death**
**Willful, Wanton, and Reckless Misconduct**
**Defendant Deputy Andrew Vigil**
**(State)**

156. That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

157. That Defendant Deputy Andrew Vigil was expressly made aware of Nancy Cleveland being a suicide risk.

158. That Defendant Deputy Andrew Vigil made a unilateral, intentional, and deliberate decision not to communicate the information he had regarding Nancy Cleveland being a suicide risk to his supervisors or the intake staff at ECDF.

159. That Defendant Deputy Andrew Vigil was not a QMHP and lacked the education, training, and expertise to determine whether or not Nancy Cleveland was potentially suicidal.

160. That Defendant Deputy Andrew Vigil's conscious failure to inform the ECDF staff and others in a position to implement suicide prevention precautions, of Nancy Cleveland being a suicide risk, was grossly negligent, willful, wanton, and a reckless disregard of the serious risk of harm to Plaintiff's Decedent.

161. That as a direct and proximate result of Defendant Deputy Andrew Vigil's willful, wanton, and reckless decision, Plaintiff's Decedent lost her life and Plaintiffs have suffered the damages as set forth in this Complaint.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

## COUNT XIV
### Wrongful Death
### Willful, Wanton, and Reckless Misconduct
### Defendant Deputy O'Neill
### (State)

162. That Plaintiffs hereby restate and incorporate herein by reference all allegations stated in this Complaint.

163. That on October 25, 2022, upon admission to ECDF, an inadequate and deficient mental health, suicide screening was performed by Deputy O'Neill (1302).

164. That Deputy O'Neill lacked sufficient training and did not qualify as a Qualified Mental Health Professional (QMHP).

165. That Defendant O'Neill's deficient "Pre-Admission Waiver" failed to include or report Nancy Cleveland's suicidal condition as expressly reported to ECDF intake and Deputy O'Neill.

166. That as a direct result of Deputy O'Neill's incomplete and misleading screening, Nancy Cleveland was not put on suicide precautions and consequently was deprived of her statutory and constitutional right to adequate medical and mental health care.

167. That Defendant Deputy O'Neill's incomplete and misleading screening was grossly negligent, willful, wanton, and a reckless disregard of the serious risk of harm to Plaintiff's Decedent.

168. That as a direct and proximate result of Defendant Deputy O'Neill's willful, wanton, and reckless decision, Plaintiff's Decedent lost her life and Plaintiffs have suffered the damages as set forth in this Complaint.

## COUNT XV
## 42 U.S.C. 1983 – Violation of Constitutional Rights
## Wellpath, LLC

169. That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

170. That Defendant Wellpatch, LLC is a Delaware corporation doing business in the State of Colorado.

171.  That at all times relevant to the matters complained of herein, Defendant Wellpath, LLC was contracted by the Eagle County Board of Commissioners to provide medical and mental health services to inmates and pre-conviction detainees at the Eagle County Detention Facility (ECDF) including screening and assessment of suicide risks and to supervise and implement the same.

172.  That at all times relevant to the matters complained of herein, Defendant Wellpath, LLC was acting under color of state law and performing a central function of the state thus making them liable for their deliberate indifference under 42 USC § 1983 (pled in the alternative).

173.  That Nancy Cleveland had a clearly established right under the Fourteenth Amendment of the United States Constitution to be free from deliberate indifference to her constitutional right to adequate medical and mental health care and for reasonable measures to be taken to assure her safety while in custody as a detainee.

174.  That Defendant Wellpath, LLC knew or should have known of Plaintiff's Decedent's suicide risk through a competent suicide screening process.

175.  That at all times relevant to the matters complained of herein, Defendant Wellpath, LLC disregarded the substantial risks associated with Nancy Cleveland's serious mental health condition by employing an unqualified individual, who was not a QMHP, and who failed to perform a competent and sensitive mental health and suicide risk screening.

176.  That at all times relevant to the matters complained of, Defendant Wellpath, LLC deliberately maintained a customs and policies, and resulting practices to promote maximizing its profits, including but not limited to the following:

   a)  Not providing adequate, educated, trained or qualified personnel on site to properly fulfill its contractual obligations and specifically QMHPs.

b) Not providing and requiring adequate and continuing training of its on-site staff,

c) Not providing competent employees and/or contractors assigned to supervise and determine suicide risk screening and assessments at ECDF with sufficient resources and continuing education.

177. That the above-cited customs and practices adopted by Defendant Wellpath, LLC were simply designed and consciously calculated to save money and costs due to Defendant Wellpath, LLC's profit motive.

178. That Defendant Wellpath, LLC acted with deliberate indifference to Plaintiff's decedent Nancy Cleveland's constitutional right to reasonable and adequate safety through medical and mental health care pursuant to common law and the Due Process Clause of the Fourteenth Amendment to the United States Constitution by failing to competently examine, test, screen, evaluate, and conduct follow up regarding Nancy Cleveland's serious mental health (suicidal) condition.

179. That Defendant Wellpath, LLC knew or should have known that Nancy Cleveland faced a substantial risk of harm from self-inflicted violence and disregarded this serious and excessive risk by failing to recommend implementing suicide prevention precautions which directly resulted in Nancy Cleveland's death.

180. That all of the deliberately indifferent acts and omissions of Defendant Wellpath, LLC were performed within the scope of their official duties pursuant to the contract between the ECBC for the ECSO and at the ECDF.

181. That the acts and/or omissions and deliberate indifference of Defendant Wellpath, LLC were the direct and proximate cause of Nancy Cleveland's death by suicide and the damages suffered by Plaintiffs as previously stated in this Complaint.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

## COUNT XVI
### Negligence
### Wellpath, LLC

182.  That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

183.  That Defendant Wellpath, LLC, as a licensed health care provider, was negligent and failed to provide medical/mental health services that met the applicable standard of care in the following particulars:

   a)  Not providing and requiring adequate and continuing training of its staff,

   b)  Not providing adequate, qualified, personnel on site to properly fulfill its contractual obligations,

   c)  Not providing employees and/or contractors assigned to screen and assess suicide risk at county jails and specifically ECDF with sufficient resources and continuing education.

184.  That as a direct and proximate result of Defendant Wellpath, LLC's negligence and breach of standard of care, Plaintiffs suffered damages as stated in this Complaint.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

## COUNT XVII
### Plaintiff's Decedent Third Party Beneficiary of Contract – Breach of Contract
### Wellpath, LLC

185.  That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

186. That the contract between ECBC and Defendant Wellpath, LLC was for valuable consideration tendered to Defendant Wellpath, LLC to provide mental health services on behalf of Eagle County and the ECSO and ECDF.

187.  That the purpose of this contract was for the specific designated benefit of all detainees at ECDF, which included Plaintiff's Decedent, a pre-conviction detainee per C.R.S. § 24-10-106(1.5)(b).

188. That Plaintiff's Decedent, was a third-party beneficiary of the aforementioned contract between Defendants ECBC and Wellpath, LLC.

189. That Defendant Wellpath, LLC breached said contract by failing to consult and provide competent suicide screening and assessment, due to Defendant's obsession with profits.

190. That Defendant Wellpath, LLC breach of contract had the foreseeable consequence and resulted in failing to take reasonable measures to prevent Nancy Cleveland's death by suicide and that Defendant Wellpath, LLC had a policy and custom of limiting its contractual services for its cost-saving, profit motive.

191. That Defendant Wellpath, LLC breach of contract was the direct and proximate cause of Nancy Cleveland's death by suicide and damages suffered by Plaintiff as previously stated in this Complaint.

WHEREFORE, Plaintiffs demand a judgment against Defendant Wellpath, LLC, including compensatory, exemplary and punitive damages together with interest, costs, and attorneys fees.

### **COUNT XVIII**
### **42 U.S.C. 1983 – Violation of Constitutional Rights**
### **Colorado West Regional Mental Health, Inc. d/b/a Mind Springs Health, Inc.**

192. That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

193.   That Defendant Colorado West Regional Mental Health, Inc. d/b/a Mind Springs Health, Inc. (Hereinafter "Defendant Mind Springs") is a Colorado corporation doing business in the State of Colorado.

194.   That at all times relevant to the matters complained of herein, Defendant Mind Springs was contracted by the Eagle County Board of Commissioners (ECBC) to provide mental health services to inmates and pre-conviction detainees at the Eagle County Detention Facility (ECDF) and to supervise and implement such care.

195.   That pursuant to Defendant Mind Springs' contract with ECBC, it provided a staff consultant located at the ECDF who was on location to provide mental health services, including mental health and suicide assessments.

196.   That between October 25, 2022 and December 7, 2022, Mind Springs employee wholly failed to see or evaluate Plaintiff's Decedent, Nancy Cleveland.

197.   That at all times relevant to the matters complained of herein, Defendant Mind Springs was acting under color of state law and performing a central function of the state thus making them liable for violation Plaintiff's Fourteenth Amendment Constitutional rights under 42 USC § 1983.

198.   That Nancy Cleveland had a clearly established right under the Fourteenth Amended to the United States Constitution to be reasonably safe and free from deliberate indifference to known serious, medical and mental health risks.

199.   That Defendant Mind Springs should have known of this clearly established right at the time of Nancy Cleveland's intake and classification at EDCF and undertaken initiating preventative measures regarding suicide risk, and an assessment.

200. That Defendant Mind Springs acted with deliberate indifference to Nancy Cleveland's constitutional right to adequate medical care due to Nancy Cleveland's bipolar condition and extreme alcohol dependency as well as a mental health care, when she was in custody as a detainee at ECDF, by failing to examine, discover, and consult regarding for Nancy Cleveland's serious mental health and suicidal condition in a timely manner as provided by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

201. That at all times relevant to the matters complained of, Defendant Mind Springs deliberately maintained a custom and policy; and resulting practices including but not limited to the following:

   a) Not providing and requiring adequate and continuing training of its staff,

   b) Not providing adequate, qualified personnel on site to properly fulfill its contractual obligations,

   c) Not providing employees and/or contractors assigned to screen and assess suicide risk at ECDF with sufficient resources and continuing education.

   d) Failing to provide a competent mental health, suicide assessment.

   e) Failing to provide Nancy Cleveland with follow-up mental health treatment.

202. That the above-cited customs and practices adopted by Defendant Mind Springs were simply to save costs and money by providing substandard staffing and sub-standard training.

203. That the acts and/or omissions and deliberate indifference of Defendant Mind Springs was the direct and proximate cause of Nancy Cleveland's death by suicide and the damages suffered by Plaintiffs as previously stated in this Complaint.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

## COUNT XIX
### Plaintiff's Decedent Third Party Beneficiary of Contract – Breach of Contract
### Colorado West Regional Mental Health, Inc. d/b/a Mind Springs Health, Inc.

204.  That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

205.  That the contract by and between ECBC and Defendant Mind Springs was entered into effective January 21, 2019 for valuable consideration and continuing each year thereafter for Defendant Mind Springs to provide mental health services on behalf of Eagle County and more specifically ECSO and ECDF.

206.  That the purpose of this contract was for the benefit of all detainees at ECDF, including Plaintiff's Decedent who was an ECDF detainee.

207.  That Plaintiff's Decedent was a third-party beneficiary of the aforementioned contract.

208.  That Defendant Mind Springs breached said contract by:

   a)  failing to provide competent suicide screening and follow-up assessment.

   b)  failing to provide support and training to enhance the jail staff and deputies' ability to manage inmates with behavioral health issues and provide increased access to behavioral health services.

   c)  Failing to provide Nancy Cleveland follow-up mental health treatment.

209.  That Defendant Mind Springs' breach of contract had the foreseeable consequence of resulting in the death by suicide of Plaintiffs' decedent, Nancy Cleveland, and incurring the damages alleged in this Complaint.

WHEREFORE, Plaintiffs request that the finder of fact assess damages against this Defendant in an amount sufficient to compensate Plaintiffs for this loss, together with punitive and exemplary damages, costs, interest, and attorney's fees.

**COUNT XX**
**Negligence / Gross Negligence**
**Eagle County Board of Commissioners**

210.  That Plaintiffs hereby restates and incorporates herein by reference all allegations stated in this Complaint.

211.  That the Eagle County Board of Commissioners has a statutory duty per C.R.S. § 17-26-126 to personally examine their county jail, assess its sufficiency and the management thereof and to discover and correct all defects, hazards, irregularities and threats to the safety of pre-conviction detainees.

212.  That Defendant ECBC had prior actual notice of at least four (4) prior suicides by hanging which had occurred at the ECDF prior to Nancy Cleveland's hanging on December 2, 2022 and actual notice of the epidemic level of suicides occurring in Eagle County prior December 2022.

213.  That upon a reasonable inspection, Defendant ECBC discovered or should have discovered the following dangerous and defective conditions:

    a)  High tie-offs on the inside of the cell windows presenting a hanging hazard;

    b)  Lack of video monitoring,

    c)  A deficient, neglectful watch policy.

214.  That despite knowledge of prior suicides (and subsequent suicides) by hanging and numerous prior attempted suicides and the suicide epidemic existing in Eagle County, Defendant ECBC cut the training budget and decreased funds allocated for training, including mental health and suicide prevention instruction and training of ECSO and ECDF staff and failed to act to remedy the above dangerous building conditions.

215.  That Defendant ECBC has a statutory duty to conduct the operations of the jail (ECDF) in a reasonable and safe manner which assures the safety of inmates and pretrial detainees

under his control (per C.R.S. § 24-10-106(1.5)(c)), such as Plaintiff's Decedent, Nancy Cleveland per C.R.S. § 24-10-106(1)(b); and to also be sure that the jail (ECDF) is free from dangerous conditions per C.R.S. § 24-10-106(1)(c) and (e).

216. That ECBC breached its common law and statutory duties, as above stated, by its custom and practices of not individually and collectively inspecting the jail for safety and by defunding training of deputies and staff.

217. That as a direct and proximate result of Defendant ECBC's failure to inspect and remedy the dangerous conditions at the ECDF and Defendant's ECBC's reduction in funds to instruct and train the deputies, jailers, and command staff at ECSO and ECDF and increase their ability to monitor and prevent jail suicides, Plaintiffs Decedent suffered damages previously stated in this Complaint.

WHEREFORE, Plaintiffs demand a judgment against Defendant Eagle County Board of Commissioners, individually and collectively, including compensatory, exemplary and punitive damages together with interest, costs, and attorneys fees.

WHEREFORE, Plaintiff seeks a Judgment in favor of Plaintiff and against Defendants James Van Beek, Gregory Van Wyk, Dan Loya, Deputy Anthony Valdez, Deputy Andrew Vigil, Deputy O'Neill, the Eagle County Sheriff's Office, Eagle County Detention Facility, Eagle County Board of Commissioners, Wellpath, LLC and Colorado West Regional Mental Health d/b/a Mind Springs Health, Inc., jointly and severally, in an amount to be determined by the trier of fact to fairly and adequately compensate Plaintiffs for the aforestated damages together with all relief allowed by law, including compensatory damages, exemplary damages, punitive damages, interest, costs, and reasonable attorney's fees.

VERIFICATION:

I declare under the penalty of perjury that I am the Plaintiff in this action, that I have read this Complaint, and that the information in this Complaint is true and correct.

Under Federal Rule of Criminal Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

Dated:   11/30/2023            /s/ Albert E. Cleveland III
                              Albert E. Cleveland III – Individually
                              And as Personal Representative of the Estate of
                              Nancy Cleveland

**JURY DEMAND**

NOW COME Plaintiffs by and through their attorneys, Sawyer Law Offices, P.C., and Lampert & Walsh, LLC and hereby demand a trial by jury in the above matter.


Respectfully submitted,

**SAWYER LAW OFFICES.COM, P.C.**


Dated: November 30, 2023          By:   /s/ Keary W. Sawyer
                                       Keary W. Sawyer (21266)
                                       *Co-Counsel for Plaintiffs*
                                       Sawyer Law Offices, P.C.
                                       418 College Ave., NE
                                       Grand Rapids, MI  49503
                                       (616) 451-8478


**LAMPERT & WALSH, LLC**


Dated:  November 30, 2023          By:   /s/ Sean B. Walsh
                                       Sean B. Walsh (35141)
                                       *Co-Counsel for Plaintiffs*
                                       LAMPERT & WALSH, LLC
                                       5281 S. Quebec Street
                                       Greenwood Village, CO 80111
                                       (720) 489-5848