IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-03180-RMR-NRN

ESTATE OF NANCY CLEVELAND, by and through its personal representative,
ALBERT E. CLEVELAND III; and
ALBERT E. CLEVELAND III, individually,

Plaintiffs,

v.

SHERIFF JAMES VAN BEEK, in his official and individual capacities;
CAPTAIN GREGORY VAN WYK, in his official and individual capacities;
UNDERSHERIFF DAN LOYA, in his official and individual capacities;
DEPUTY ANTHONY VALDEZ, in his official and individual capacities;
DEPUTY ANDREW VIGIL, in his official and individual capacities;
DEPUTY O'NEILL, in his official and individual capacities;
EAGLE COUNTY SHERIFF'S OFFICE,
EAGLE COUNTY BOARD OF COMMISSIONERS,

Defendants.

---

## REPORT AND RECOMMENDATION ON
## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6) BY ECSO DEFENDANT GROUP (ECF No. 128), DEFENDANTS DEPUTY O'NEILL AND DEPUTY VALDEZ (ECF No. 131), AND DEFENDANT ANDREW VIGIL (ECF No. 135)

---

**N. REID NEUREITER**
**UNITED STATES MAGISTRATE JUDGE**

This matter is before the Court on the Motions to Dismiss Pursuant to Fed. R.

Civ. P. 12(b)(1) and 12(b)(6) by remaining[1] Defendants Sheriff James Van Beek,

---

[1] In addition to the above Defendants, Plaintiffs had initially brought claims against Wellpath LLC, Joseph Drew, and Colorado West Regional Mental Health. All Defendants moved to dismiss the claims against them. *See* ECF Nos. 64, 65, 66, 71, and 74. Subsequently, Defendant Colorado West Regional Mental Health was terminated on July 5, 2024. ECF No. 97. On November 14, 2024, Wellpath, LLC filed a Suggestion of Bankruptcy, ECF No. 110, and this case was adminstratively closed on January 13, 2025, ECF No. 120. Defendants Wellpath, LLC, and Joseph Drew were

Undersheriff Gregory Loya, Captain Gregory Van Wyck, and the Eagle County Board of Comissioners (the "Board") (collectively, the "ECSO Defendant Group"), ECF No. 128, Defendants Deputy John O'Neill and Deputy Anthony Valdez, ECF, No. 131, and Defendant Deputy Andrew Vigil, ECF No. 135. The Estate of Ms. Cleveland (the "Estate") and Plaintiff Albert E. Cleveland ("Mr. Cleveland") (together, "Plaintiffs") filed their responses to all three motions on April 26, 2024. ECF Nos. 129, 132 and 136. Defendants filed separate replies, ECF Nos. 130, 133, and 137, and jointly filed a supplemental brief, ECF No. 138. The Court heard oral arguments on the subject motions on June 24, 2024, ECF No. 91.

The Estate of Ms. Cleveland (the "Estate") and Plaintiff Albert E. Cleveland ("Mr. Cleveland") (together, "Plaintiffs") filed their initial suit on December 1, 2023, ECF No. 1. An Amended Complaint was later filed on February 15, 2024, ECF. No. 47. Plaintiffs bring various federal claims pursuant to 42 U.S.C § 1983[2] and state law claims for negligence and wrongful death.

The Court has taken judicial notice of the Court's file, considered the applicable Federal Rules of Procedure and case law. Now, being fully informed and for the reasons discussed below, the Court makes the following recommendation.

---

ultimately terminated on March 25, 2025. ECF No. 124.The case was re-opened on April 17, 2025, and the subject Motions to Dismiss were re-filed at ECF Nos. 128, 131, and 135 respectively. Hereinafter, the Court will refer to these and all associated filings by their most recent ECF number.

[2] Section 1983 provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law.

## I.    FACTUAL BACKGROUND[3]

Nancy Annette Cleveland committed suicide on December 2, 2022, while incarcerated at the Eagle County Detention Facility ("ECDF"). Mr. Cleveland brings this suit individually and as the personal representative of Ms. Cleveland's Estate. Ms. Cleveland was initially incarcerated at ECDF, bonded out, and then reincarcerated on October 25, 2022 due to charges of drinking and driving. Upon her readmission on October 25, 2022, Ms. Cleveland was in an intoxicated state. Due to Ms. Cleveland's alcohol dependency and suicidal ideations, Ms. Cleveland's attorney had her agree to have her bond revoked voluntarily for her own safety.

At the time Ms. Cleveland was readmitted, she was accompanied by her friend, Daniel Heinze. That day, Mr. Heinze informed the ECDF intake staff that Ms. Cleveland was suicidal. A second physical and mental health assessment was done on Ms. Cleveland on November 14, 2022 by Wellpath, LLC—a private company contracted by the Board to provide mental health and suicide screening and prevention services— which indicated some risk of suicide.

On November 18, 2022, while still in custody, Ms. Cleveland wrote a letter that was intercepted by Deputies Anthony Valdez and Andrew Vigil. Ms. Cleveland's letter stated that she was going to kill herself before her next court date on December 9, 2022. Deputy Valdez informed Captain Van Wyk of the letter and the two had a discussion regarding Ms. Cleveland's suicidality that same day. In addition to this letter,

---

[3] Unless otherwise stated, all factual allegations are taken from the First Amended Complaint ("Complaint"), ECF No. 47, and all non-conclusory allegations are presumed true for the purposes of the pending motions to dismiss. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

there were over a dozen emails and texts sent by Ms. Cleveland between November 7, 2022 and December 1, 2022, expressing depression and suicidal ideation, which were screened, monitored, and recorded by ECDF staff. Despite all this information and notice, Ms. Cleveland was kept in general population and alone in a single cell with bedsheets and access to a high tie-off point. No suicide precautions were undertaken with respect to Ms. Cleveland at any time during her incarceration at ECDF.

On December 2, 2022, Ms. Cleveland was discovered hanging in her cell, having tied a bedsheet around her neck and affixing the bedsheet to the top bunk. On the day of her suicide, Ms. Cleveland was left unsupervised and unmonitored for over four hours, even though Defendants had the ability to monitor her cell via video surveillance. Ms. Cleveland ultimately died on December 7, 2022. The Eagle County Coroner's Office later determined the cause of death to be "asphyxiation," consistent with suicide by hanging.

Based on the foregoing allegations, Plaintiffs bring several § 1983 claims against Sheriff Van Beek, Undersheriff Loya, Captain Van Wyk, and Deputies Vigil and Valdez, in their official capacities. Plaintiffs also bring state law claims for negligence and wrongful death against all Defendants, including Deputy O'Neill and the Board. On the face of the Amended Complaint, no § 1983 claims are explicitly brought against any Defendants in their individual capacities. However, in all three motions to dismiss, Defendants provide briefing on the issue of qualified immunity with respect to potential individual capacity claims. Plaintiffs address these arguments in their reply and seem to be under the impression that they have indeed brought both official and individual federal claims against the named Defendants. Therefore, while the Amended Complaint

may be inartfully pled, the Court will offer its analysis of any individual capacity claims that may exist.

## II.    STANDARDS FOR DISMISSAL

### a.  Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a complaint may be dismissed for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's claim. Instead, it is a determination that the court lacks authority to adjudicate the matter." *Creek Red Nation, LLC v. Jeffco Midget Football Ass'n, Inc.*, 175 F. Supp. 3d 1290, 1293 (D. Colo. 2016) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (citation omitted). As the party seeking to invoke the jurisdiction of this court, Plaintiff bears the burden of alleging facts that support jurisdiction. *See Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013) ("Since federal courts are courts of limited jurisdiction, we presume no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction") (quoting *United States ex rel. Hafter v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999)).

### b.  Federal Rule of Civil Procedure 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp v.*

*Twombly*, 550 U.S. 544, 570 (2007)). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662 678 (2009). While courts must accept well-pled allegations as true, purely conclusory statements are not entitled to this presumption. *Id*. at 678, 681.Therefore, so long as Plaintiffs plead sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible," they have met the threshold pleading standard. *Twombly*, 550, U.S. at 556, 570.

A well-pled claim of municipal liability is one that simply provides fair notice to the defendant, which requires more than generically restating the elements of municipal liability. *Taylor v. RED Dev., LLC*, No. 11-2178-JWL, 2011 WL 3880881, at *3 (D. Kan. Aug. 31, 2011) (citing *Thomas v. City of Galveston, Tex*., 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011)). There is a balance demanded in pleading municipal liability which requires "more than boilerplate allegations but not demanding specific facts that prove the existence of a policy." *Id*. (internal citations omitted).

As Judge David M. Ebel has explained while sitting as a district judge, "The reasons for not requiring heightened fact pleading in a § 1983 municipal liability complaint remain even in the wake of *Twombly* and *Iqbal*: a plaintiff, as an outsider to municipal government, is not expected to have information about a city's official policies, practices, or training programs at the pleading stage." *Walker v. Zepeda*, No. 11-cv-01242-DME-CBS, 2012 WL 13285403, at *5 (D. Colo. May 29, 2012). "To require more could foreclose legitimate § 1983 claims that, after appropriate discovery, turn out to have evidentiary support." *Id*. Thus, even in the municipal liability context, "[e]valuating the sufficiency of a complaint is a 'context-specific task that requires the reviewing court

to draw on its judicial experience and common sense.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679).

### III.   ANALYSIS

#### a.  Plaintiffs Standing to Sue

Survival actions may only be brought by the personal representative of Ms. Cleveland's Estate. Defendants argue, therefore, that Mr. Cleveland, as an individual, lacks standing to bring his own federal or state law claims for negligence and wrongful death. The Court agrees. *See Berry v. City of Muskogee, Okl.*, 900 F.2d 1489, 1506–07 (10th Cir.1990) (remedy in § 1983 death cases should be a survival action brought by the estate of the deceased victim); Colo. Rev. Stat. § 23-20-101. Indeed, Plaintiffs seem to concede this point in their response. *See* ECF No. 129 at 21 ("Any 'individual' claim would only be [Mr. Cleveland] acting as the personal representative for the Estate."). Therefore, any claims Mr. Cleveland asserts on his own behalf should be dismissed.

#### b.  Official Capacity Claims

Plaintiffs assert claims against the Sheriff Van Beek, Undersheriff Loya, Captain Van Wyk, and Deputies Valdez and Vigil (Counts I, IV, VII, X and XII) in their official capacities. Plaintiffs have not asserted any § 1983 claims against the Board or the Eagle County Sheriff's Office ("ECSO"). As a threshold matter "a section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Stuart v. Jackson*, 24 F. App'x. 943, 956 (10th Cir. 2001) (quoting *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998)). Accordingly, where a plaintiff sues both the municipality and municipal official in an official capacity under the same theory of recovery, courts have dismissed the official

capacity claim against the individual as "duplicative" or "redundant" of the claim against the municipal entity. *See Leadholm v. City of Commerce City*, No. 16-cv-02786-MEH, 2017 WL 1862313, at *5 (D. Colo. May 9, 2017). In this case, where Plaintiffs have brought several official capacity claims against individuals belonging to the same governmental entity, the overlapping official capacity claims are redundant and should be dismissed such that only Count I alleged against the Sheriff in his official capacity should remain, which in turn shall be construed as a municipal liability claim.

### c. Municipal Liability Claim (Count I) Against Sheriff Van Beek

It is well established that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). A municipality can be liable under § 1983 only where the municipality itself causes the constitutional violation at issue. *Monell*, 436 U.S. at 690–91. To state a claim for municipal liability, a plaintiff must plausibly allege the existence of a municipal policy or custom and a causal link between the policy or custom and the injury alleged. *See Mocek v. City of Albuquerque*, 813 F.3d 912, 933 (10th Cir. 2015). He must also "show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). Thus, to prove a municipality is liable under § 1983 for the acts of one of its employees, a plaintiff must show (1) that a municipal employee committed a constitutional violation and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood,* 392 F.3d 410, 419 (10th Cir. 2004).

An official policy or custom may take one of the following forms:

a (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation and alteration marks omitted).

Whatever form of policy or custom is alleged,

[t]he plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in original).

Also, at least for claims of inadequate hiring, training, or other supervisory practices, the Tenth Circuit has explained,

a plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown*, 520 U.S. at 407. "'Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action,'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Brown*, 520 U.S. at 410) (internal quotation marks and brackets omitted), as "[a] less stringent standard of fault for a failure-to-train claim 'would result in de facto respondeat superior liability on municipalities,'" *id*. at 62 (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143

F.3d 1299, 1307 (10th Cir. 1998). "In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Id*. Deliberate indifference "may be found absent a pattern of unconstitutional behavior" only in "a 'narrow range of circumstances'" where "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction." *Id*. at 1307–08 (quoting *Brown*, 520 U.S. at 409).

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019).

### i. Failure to Adequately Train and Failure to Implement Policy

While the Amended Complaint does not explicitly label their *Monell* claim as such, the Court finds that Plaintiffs' claims are most appropriately categorized as "failure to train" or "failure to implement policy" theories of liability. The Court will address both these theories together. *See Myers v. Koopman*, No. 09-cv-02802-REB-MEH, 2011 WL 650328, at *6 (D. Colo. Feb. 11, 2011) ([A] failure to train theory has been seen as a supervisory liability claim that, at bottom, implicates a supervisor's implementation of a policy.") (citing *Dodds v. Richardson*, 614 F.3d 1185, 1209 (10th Cir. 2010) (Tymkovich, J., concurring)).

Plaintiffs allege that Sheriff Van Beek was responsible for training and supervising all employees at ECSO, including the named Defendants; setting jail policy and custom; and "directing the overall management of the jail (ECDF)." ECF No. 47 ¶ 72. They further allege that the ECSO failed to implement or follow an adequate suicide prevention policy, and that Sheriff Van Beek failed to instruct, train, and supervise his command and staff regarding suicide prevention and monitoring cells. *Id.* ¶ 68. Plaintiffs argue that these failures amount to a pattern of course of conduct, custom, and policy of deliberate indifference to the protection of suicidal inmates and, specifically, of Ms.

Cleveland. For its part, the ECSO Defendant Group seeks dismissal of the *Monell* claim, arguing that Plaintiffs rely only on unsupported conclusory allegations.

By themselves, the above allegations are perhaps merely conclusory. However, when read together with the underlying facts, the Court finds that Plaintiffs have pled sufficient facts to put the ESCO on fair notice of Plaintiff's claims and the grounds upon which they bring suit. *Walker*, 2012 WL 13285403, at *5.

The Court recognizes that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on the failure to train." *Connick*, 563 U.S. at 61. To state a *Monell* claim based on the failure to train, "a plaintiff must sufficiently allege that the failure 'amounts to deliberate indifference to the rights of persons with whom the [County] come[s] into contact.'" *Rehberg v. City of Pueblo,* No. 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *4 (quoting *Harris*, 489 U.S. at 388). To satisfy the deliberate indifference standard, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary.'" *Connick*, 563 U.S. at 62 (citing *Brown*, 520 U.S. at 409). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* However, "'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Id.* at 63–64 (quoting *Brown*, 520 U.S. at 409). A municipality may still be found deliberately indifferent "if a violation of a federal right is a 'highly predictable' or 'plainly' obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle

recurring situations, thus presenting an obvious potential for constitutional violations."
*Id*.

Plaintiffs argue that the specific circumstances of Ms. Cleveland's death, along with the pattern of prior jail suicides by hanging at ECDF, expose the ECSO's failure to adequately train, supervise, and implement an adequate suicide prevention policy, which resulted in the ECSO's deliberate indifference to the obvious risk that Ms. Cleveland's would commit suicide. The ECSO Defendant Group, for its part, argues the Complaint fails to state a *Monell* claim because, among other reasons, the allegations of other inmate deaths at ECDF are insufficient to establish that the Sheriff's Office was on notice of the need for better training, policies, or supervision. The Court agrees with the Plaintiffs.

In their Amended Complaint, Plaintiffs point to four prior jail suicides at ECDF, all of which occurred by hanging. They point to the deaths by suicide of Rafael Terrazas Macias in 2012, Eric Trottier in 2014, Nathon Simon in 2019, and Wilbur Hulliger in 2019, with the last two occurring within one month of each other.[4] Furthermore, Sheriff Van Beek was seemingly aware of and responded to the problem of the rise in jail suicides in a public statement in September of 2019, which read:

> There has been a rise in suicides across Eagle County, and we were shocked when two occurred in our jail this month. There are many factors

---

[4] Plaintiffs include additional this factual information about Mr. Simon in their briefing—such as that ECSO had received at least four prior notifications, including a 911 call, that Mr. Simon was suicidal, and that, like Ms. Cleveland, Mr. Simon was placed in general population in a single cell with high tie-offs and bed sheets, and was left unmonitored for multiple hours—but the Court cannot accept these allegations in the context of a motion to dismiss, because they have not been included in an amended complaint. However, even without these additional factual allegations, the Court finds Plaintiffs have sufficiently alleged a pattern of prior suicides to have put the Sheriff's Office on notice of the need for appropriate anti-suicide training and policies.

> to consider in running a detention facility. There is a balance between measuring someone's tendency towards self-harm and their right to privacy . . . . [There is] . . . a balance between securing the jail from any implements which might be used for self-harm, and consideration that even while in detention, it is thoughtful to include such comforts as sheets.

ECF No. 47 ¶ 21. These statements, if true, would show Sheriff Van Beek was at least aware of the prior incidents and in charge of ECDF at the time they occurred. *Cf. Est. of Kowalski v. Shrader,* No. 21-cv-00827-NYW, 2022 WL 19422, at *18 (D. Colo. Jan. 3, 2022) (finding that notice of deficiency in training was not established where complaint did not contain allegations as to whether the same individual defendants were at the jail at time of prior incidents). One could reasonably infer from Sheriff Van Beek's public statement that he was aware that items such sheets were being utilized for self-harm, and that despite the two prior incidents in 2019, he believed the existing policies were justified because a "balance" must be struck between providing certain comforts and removing all items that could be used for self-harm.

The Court finds that these allegations, at least at the motion to dismiss stage, plausibly allege a pattern of unconstitutional behavior that would put the ECSO on notice of a deficiency in their training, supervision, or implementation of policy.

Furthermore, even if the four prior incidents were insufficient to allege a pattern of similar constitutional violations, the Court finds that Plaintiffs' allegations fall within the narrow "range of circumstances" where deliberate indifference "may be found absent a pattern of unconstitutional behavior." *Barney*, 143 F.3d 1299, 1307–08 (10th Cir. 1998) (quoting *Brown*, 520 U.S. at 409). Here, Sheriff Van Beek and his office were charged with the housing and care of Ms. Cleveland, and it is a reasonable inference, from the letter and other communications, that they knew she had suicidal ideations and was at

high risk for suicide. Mr. Heinze, who had accompanied Ms. Cleveland on the day of her

admission, explicitly told ECDF staff at intake that Ms. Cleveland was suicidal. On

November 14, 2022, a physical and mental health assessment was conducted, which

indicated some risk of suicide.[5] Four days later, on November 18, 2022, Deputies

Valdez and Vigil intercepted a letter written by Ms. Cleveland, which stated that she was

going to kill herself before her next court date of December 9, 2022. In addition to the

letter, which was brought to the attention of Captain Van Wyk, there were multiple

emails and texts by Ms. Cleveland that were screened and monitored by ECDF staff

that repeatedly expressed feelings of depression and not wanting to be alive. Some of

these messages in the days leading up to Ms. Cleveland's death included the following:

> November 20, 2022 "I'm deeply depressed and not eating much . . . ."

> November 22, 2022 "I am having such a hard time with everything and want
> it to end . . . . . . ."

> November 28, 2022 "I wish I wasn't alive right now . . . ."

ECF No. 47 ¶ 13. Despite numerous direct and indirect communications of suicidal

tendencies and intentions to the jail deputies, captain, and medical and other staff at

ECDF, there was no elevation in care with respect to Ms. Cleveland. There was no

follow-up assessment or mental health referral that was conducted after the letter was

intercepted, and Ms. Cleveland was never placed on suicide watch. Instead, Ms.

Cleveland was kept in general population and left alone in a single cell with bed sheets

---

[5] In their response to the ECSO Defendant Group's motion to dismiss, Plaintiffs
provide additional facts regarding the November 18, 2022, assessment. Specifically,
Plaintiffs allege that Ms. Cleveland responded "Yes" to the question, "Have you recently
considered attempting suicide?" (ECF No. 129, pg. 5). While the Court acknowledges
that Plaintiffs have alleged these facts in their response, the Court cannot consider them
within the context of a motion to dismiss.

and access to a high tie-off point, which Plaintiffs argue was akin to a virtual "suicide kit." ECF No. 129 at 4. On the day of her death, Ms. Cleveland's cell was left unmonitored for multiple hours on end despite the ability to monitor her via a surveillance camera that was aimed at her cell.

These allegations, taken as a whole, plausibly state a claim for failure to train or implement a policy. If the staff at the ECSO and ECDF were acting pursuant to their training or lack of training, the inadequate care provided to Ms. Cleveland, especially in light of the explicit letter dated November 18, 2022, demonstrated a policy, practice, or custom of deliberate indifference towards inmates with suicidal tendencies. The death of a suicidal inmate constitutes a "highly predictable" or "plainly obvious" consequence of a training program that permits a suicidal inmate—who has communicated an intent to commit suicide and has provided a concrete date by which she intends to do so—to be left in her cell alone, unmonitored, and with access to materials that can be used to self-harm. The ECSO Defendant Group's motion to dismiss the municipal liability claim based on a failure to train should be denied.

### d. Individual Capacity Claims

To the extent that all parties have briefed and had an opportunity to respond to any individual capacity claims against the named defendants, the Court will address the merits of any federal claims that may exist against Sheriff Van Beek, Undersheriff Loya, Captain Van Wyk, and Deputies Valdez and Vigil in their individual capacities.

In their motions, all three defendant groups argue they are entitled to qualified immunity because Plaintiffs have failed to demonstrate that a violation of any federal constitutional rights. "The doctrine of qualified immunity protects government officials

from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). To resolve a claim of qualified immunity, the Court must consider two elements: (1) whether the plaintiff has alleged a constitutional violation, and (2) whether the violated right was "clearly established" at the time of the violation. *Id*. at 230–31. "The judges of the district courts . . . [may] exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id*. at 236. Qualified immunity applies unless the plaintiff can satisfy both prongs of the inquiry. *Id*. at 232.

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). However, it is important to bear in mind that because this defense is being evaluated in relation to a Rule 12(b)(6) motion, Defendants are subjected "to a more challenging standard of review than would apply on summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1195 (10th Cir. 2014) (quoting *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004)). As a result, it is Defendants' conduct "as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Id*. (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)). Thus, when "addressing the issue [of qualified immunity] at the motion to dismiss and not the summary judgment stage, [a] [p]laintiff is only required to allege a constitutional violation that is plausible on its face." *Torres v. White*, No. 08-cv-196-JHP-FHM, 2009 WL 37617, at *2 (N.D. Okla. Jan. 6, 2009).

16

Under the first prong of qualified immunity, "[c]laims based on a jail suicide are considered and treated as claims based on the failure of jail officials to provide medical care for those in their custody." *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015). Therefore, these claims must be "judged against the 'deliberate indifference to serious medical needs.'" *Est. of Hocker by Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994) (citing to *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)).

A claim for deliberate indifference to serious medical needs has both an objective and a subjective component.[6] *Cox*, 800 F.3d at 1240 n.3. The objective component of the deliberate indifference test "requires showing the alleged injury is "sufficiently serious." *Redmond v. Crowther*, 882 F.3d 927, 939 (10th Cir. 2018). The Tenth Circuit has found that death is sufficiently serious to meet this prong. *See Est. of Burgaz by & through Zommer v. Bd. of Cnty. Comm'rs for Jefferson Cnty. Colo.*, 30 F.4th 1181, 1186 (10th Cir. 2022); *see also Martinez v. Beggs,* 563 F.3d 1082, 1088 (10th Cir. 2009) (observing that death is without doubt "sufficiently serious to meet the objective component."). Second, the subjective inquiry is satisfied if "the official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and []he must also draw the inference.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[A] factfinder may

---

[6] The same standard applies whether a claim for deliberate indifference to serious medical needs is brought under the Eighth Amendment or the Fourteenth Amendment. *George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Comm'rs*, 32 F.4th 1246, 1256 (10th Cir. 2022) ("[W]e apply the same deliberate indifference standard no matter which amendment provides the constitutional basis for the claim.").

conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. (quoting *Farmer*, 511 U.S. at 842). But the plaintiff "'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act *despite his knowledge of a substantial risk of* serious harm.'" *Id*. at 752 (quoting *Farmer*, 511 U.S. at 842). An official "'would not escape liability if the evidence showed that he merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id*. (quoting *Farmer*, 511 U.S. at 843 n.8).

Under the second prong of qualified immunity, "[i]t is clearly established that specific conduct violates a constitutional right when Tenth Circuit or Supreme Court precedent would make it clear to every reasonable officer that such conduct is prohibited." *Perea*, 817 F.3d at 1204. The Supreme Court has held that certain conduct is so egregious that it renders "the violation . . . so obvious that our own . . . cases g[i]ve respondents fair warning that their conduct violate[s] the Constitution." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see also Browder v. City of Albuquerque*, 787 F.3d 1076, 1082 (10th Cir. 2015) ("After all, some things are so obviously unlawful that they don't require detailed explanation and sometimes the most obviously unlawful things happen so rarely that a case on point is itself an unusual thing.").

### i. Review of alleged facts to determine whether both prongs of qualified immunity are met with respect to Sheriff Van Beek and Undersheriff Loya

Plaintiffs do not sufficiently allege that either Sheriff Van Beek or Undersheriff Loya had actual knowledge of Ms. Cleveland's risk of suicide, as is required for supervisory liability under § 1983 within the jail-suicide context.

"A § 1983 defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability." *Brown*, 662 F.3d at 1163. Supervisors are not vicariously liable for their employees' acts under § 1983, but a supervisor may be liable for "*personally* violat[ing] [a plaintiff's] constitutional rights." *Perry v. Durborow*, 892 F.3d 1116, 1121. To establish supervisory liability, a plaintiff must "show an affirmative link between" a supervisor and the alleged constitutional injury. *Id.* (quotations omitted). The "plaintiff must prove: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *George, on behalf of Bradshaw v. Beaver Cnty., by & through Beaver Cnty. Bd. of Comm'rs*, 32 F.4th 1246, 1255 (10th Cir. 2022) (quotations omitted). "Precisely what state of mind is required for individual liability depends on the type of claim a plaintiff brings." *Schneider*, 717 F.3d at 769. The state of mind to establish "§ 1983 jail-suicide supervisory[ ]liability" is knowledge "that the specific inmate at issue presented a substantial risk of suicide." *George*, 32 F.4th at 1257 (citing *Cox*, 800 F.3d at 1250).

Plaintiffs allege that Mr. Heinze provided "ECDF intake staff" with information regarding Ms. Cleveland's suicidality. However, nowhere in the Amended Complaint is it explicitly stated that the intake staff communicated this to either Sheriff Van Beek or Undersheriff Loya. Likewise, the Amended Complaint does not allege that the jail staff who screened Ms. Cleveland's texts and emails included either Sheriff Van Beek or Undersheriff Loya, or that the contents of those messages were communicated to them. Additionally, nowhere in the Amended Complaint is it alleged that the November 18,

2022 letter was brought to the attention of either Defendant. In their response, Plaintiffs argue, hypothetically, that "[i]f Undersheriff Loya and Sheriff Van Beek were not notified of Nancy's condition . . . then they have intentionally failed to enact and enforce the appropriate preventative reporting policies and procedures." ECF No. 129 at 4. This argument, however, would only be relevant to Plaintiffs' *Monell* claim for failure to train or failure to implement policy, not to any individual capacity claims. Plaintiffs further allege that upon belief "in a max 60-person jail, that the Sheriff and Undersheriff were notified of the risk to Nancy's safety . . . ." However, the implication that the jail was so small that both Defendants must have been aware of the risk of suicide to any particular inmate is far too circumstantial to establish subjective knowledge. The Amended Complaint is devoid of any non-conclusory facts showing that Sheriff Van Beek or Undersheriff Loya had "actual knowledge . . . of an individual inmate's substantial risk of suicide," *Cox*, 800 F.3d at 1249. Accordingly, any individual supervisory liability claims brought against Sheriff Van Beek or Undersheriff Loya should be dismissed.

### ii.    Review of alleged facts to determine whether both prongs of qualified immunity are met with respect to Captain Van Wyk

### I.    Violation of Ms. Cleveland's Constitutional Rights

To carry their burden under the first prong of the qualified immunity test, Plaintiffs must show that Captain Van Wyk violated Ms. Cleveland's constitutional or statutory rights. To satisfy this prong, Plaintiffs must plausibly allege that Captain Van Wyk had subjective knowledge of the substantial risk of serious harm to Ms. Cleveland and, despite this knowledge, failed to act. The Court finds that Plaintiffs have plausibly alleged Captain Van Wyk had actual knowledge of the risk.

In their Amended Complaint, Plaintiffs allege that on November 18, 2022, Deputies Anthony Valdez and Andrew Vigil intercepted a letter written by Ms. Cleveland which stated that she was suicidal and that she was going to kill herself before December 9, 2022. Plaintiffs allege that both deputies informed Captain Van Wyk of the letter and that Deputy Valdez, specifically, spoke "'with Captain Van Wyk and Detective Sergeant Veldheer regarding Nancy Cleveland's suicidality on November 18, 2022.'" ECF No. 47 ¶ 12. Plaintiffs further allege that despite Captain Van Wyk's knowledge of the contents of the letter, he failed to initiate any suicide precautions. *Id.* ¶ 19. Ms. Cleveland was not placed on suicide watch and there was no elevation of care her.

In their motion, the ECSO Defendant Group argues that there is "no effort to identify whether any of the Supervisory Defendants made some 'deliberate or conscious choice' in the two-week period between when the deputies learned of . . . the letter and her death that actually caused her suicide." ECF No. 128 at 6. However, the ECSO ECSO Defendant Group does not dispute that Captain Van Wyk had subjective knowledge of Ms. Cleveland's suicidality. Interpreting the well-pled facts in the light most favorable to Plaintiffs, the Court finds that an inference can properly be drawn that, because Captain Van Wyk was informed of Ms. Cleveland's intentions to commit suicide by a specified date and he took no steps to initate any suicide precautions for Ms. Cleveland, he was deliberately indifferent to Ms. Cleveland's serious medical needs. *Cf. Est. of Burgaz*, 30 F.4th at 1188 (finding deputy was qualifiedly immune where there were no allegations that Ms. Burgaz expressed suicidality or intentions to harm herself). Thus, the Court finds that Plaintiffs have carried their burden as to the first prong of qualified immunity with respect to Captain Van Wyk.

## II.    Clearly Established Law

Next, Plaintiffs must establish that Ms. Cleveland's right was clearly established at the time of Captain Van Wyk's conduct. The Court finds that Plaintiffs have sufficiently pled that Captain Van Wyk's conduct violated clearly established law.

In deciding the "clearly established" question, the Court employs a "sliding scale" under which "the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Shroff v. Spellman*, 604 F.3d 1179, 1189– 90 (10th Cir. 2010) (alteration omitted) (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir .2008)). Tenth Circuit caselaw has clearly established that a municipal official's failure to take *any* steps to assist a suicidal inmate despite awareness of the risk of suicide constitutes deliberate indifference to a serious medical need. "There can be little debate that it was clearly established, long before 1998, 'that prison officials will be liable under Section 1983 for a pretrial detainee's suicide if they were deliberately indifferent to a substantial suicide risk.'" *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1308 (10th Cir. 2021) (quoting *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001)). Similarly, in *Quintana v. Santa Fe County Board of Commissioners,* the Tenth Circuit found that "it was clearly established that when a detainee has obvious and serious medical needs, ignoring those needs necessarily violates the detainee's constitutional rights." 973 F.3d 1022, 1033 (10th Cir. 2020). There, the court held that a police officer's "inaction in the face [decedent's] bloody vomiting violated clearly established law." *Id*.; *see also Lieberenz v. Wilson,* No. 23-1055, 2024 WL 2952150 (10th Cir. June 12, 2024) (unpublished) (finding that jail captain's conduct constituted deliberate indifference

22

where he had subjective knowledge of a substantial risk that inmate would commit suicide but took no steps to protect inmate). Thus, the Court finds that the precedent in this Circuit clearly established Ms. Cleveland's right at the time of Captain Van Wyk's conduct.

> ### iii. Review of alleged facts to determine whether both prongs of qualified immunity are met with respect to Deputies Anthony Valdez and Andrew Vigil

> ### I. Violation of Ms. Cleveland's Constitutional Rights

Next, the Court will address the individual capacity claims brought against Deputies Valdez and Vigil. Since the factual allegations in the Amended Complaint against both deputies are almost identical, the Court will analyze these claims together.

As previously discussed, Plaintiffs allege that Deputies Anthony Valdez and Andrew Vigil intercepted a letter on November 18, 2022, written by Ms. Cleveland, stating that she was suicidal and would kill herself before December 9, 2022. Ms. Cleveland subseqently followed through on her delclaration and committed suicide on December 2, 2022. Both deputies informed Captain Van Wyk and Deputy Valdez, specifically, had a conversation with Captain Van Wyk regarding Ms. Cleveland's letter. ECF No. 47 ¶ 12. Plaintiffs also allege that Deputy Vigil told Deputy Valdez to go talk to Ms. Cleveland about the letter, which he did, and that Deputy Valdez had noticed a "mood change" in Ms. Cleveland. *Id.* ¶¶ 10, 142.

In his motion to dismiss, Defendant Vigil suggests that, apart from the letter dated November 18, 2022, the Amended Complaint is "devoid of any allegation that [he] knew that Ms. Cleveland was particularly vulnerable to suicide through suicide attempts or suicidal ideation" and that the letter alone is "insufficient" to demonstrate that Deputy

Vigil was aware that Ms. Cleveland presented a substantial risk of suicide. ECF No. 13
at 11. The Court is not persuaded. It is not disputed that Deputy Vigil and Deputy
Valdez intercepted and had knowledge of the contents of the letter of November 18,
2022. These facts alone make out the exemplary case of subjective knowledge. In
many cases, plaintiffs must rely on circumstantial evidence to show knowledge (i.e., that
the decedent had attempted suicide in the past, that they were on certain medications,
or had expressed general sentiments of depression). However, in the face of an explicit
letter that even provides a concrete timeframe for Ms. Cleveland's suicide plan, the
Court need not take any inferential steps. It is unclear what difference a prior suicide
attempt or an additional letter would have made in terms of establishing these
Defendants' subjective knowledge.

Deputy Valdez argues that notifying a supervisor of the letter and doing nothing
more is sufficient to overcome a finding of deliberate indifference. ECF No. 131 at 14.
Once again, at least for the purpose of a motion to dismiss, the Court disagrees. After
receiving the letter, neither deputy made any efforts to place Ms. Cleveland on suicide
watch or refer her for a mental health evaluation, as they were supposed to do pursuant
to Sheriff Van Beek's two-page "Suicide Prevention" protocol. *See* ECF No. 129-1
("[S]hould staff hear or observe signs that an inmate may be suicidal, the inmate *shall*
be immediately be [*sic*] placed on suicide watch and referred to mental health staff for
assessment.") (emphasis added); ("Detention facility staff must take all suicidal threats
or actions seriously."). [7] There were no follow-up visits conducted, no additional

---

[7] Plaintiffs have attached the two-page protocol as an exhibit to their response
papers. To the extent that the parties do not dispute the authenticity or the contents of
the document, the Court will take judicial notice of the exhibit. Judicial notice may be

monitoring, and no other elevation of care for Ms. Cleveland. While the Court agrees with Defendant Vigil that conduct that merely violates ECDF policies and procedure may be insufficient to rise to the level of deliberate indifference, both deputies had a clear *personal* responsibility to undertake suicide precautions for Ms. Cleveland and take her threat seriously. It is not enough that Deputies Valdez and Vigil passed the information along to Captain Van Wyk and did nothing further in the weeks between November 18, 2022 and December 2, 2022 to ensure that Ms. Cleveland was receiving the proper care.

Instead, Ms. Cleveland was left alone in her cell in general population, unmonitored for multiple hours, and with access to materials that could be used for self-harm. Based on these allegations, the Court finds that Plaintiffs have plausibly alleged that Deputies Valdez and Vigil were deliberately indifferent to Ms. Cleveland's serious medical needs. Thus, Plaintiffs have carried their burden as to the first prong of qualified immunity.

## II.    Clearly Established Law

The Court finds that the precedent in this Circuit clearly establishes Ms. Cleveland's right at the time of both Deputy Valde and Deputy Vigil's conduct. In making

---

taken during any stage of the judicial proceeding, including the stage of a motion to dismiss. *See* 21B C. Wright & K. Graham, *Federal Practice & Procedure* § 5110, at 294 & n.17 (2d ed. 2005). And while ordinarily a motion to dismiss must be converted to a motion for summary judgment when the court considers matters outside the complaint, *see* Fed. R. Civ. P. 12(d), matters that are judicially noticeable do not have that effect, *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008). The judicially noticed documents, however, should not be considered for the truth of the matters asserted therein. *Tal v. Hogan*, 453 F.3d 1244, 1265 n.24 (10th Cir. 2006).

this finding, the Court relies on the same clearly established law in the analysis of the

individual capacity claim against Captain Van Wyk.

### e.  All State Law Claims are Barred for Failure to Give Timely Notice under Colorado's Governmental Immunities Act

In addition to the federal § 1983 claims, Plaintiffs bring various state law claims

for Willful and Wanton Conduct (Counts II, V, VIII, XIV, XXI), Negligent Operation of a

Jail (Counts III, VI, IX), and Wrongful Death (Counts XI, XIII) against Defendants. All

Defendants move to dismiss the state law claims against them for failure to provide

timely notice under Colo. Rev. Stat. § 24-10-109. In order to proceed with each of the

state law claims, Plaintiff must comply with certain notice requirements in the Colorado

Governmental Immunities Act ("CGIA"):

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred eighty-two days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

Colo. Rev. Stat. § 24-10-109(1). Such notice must contain certain specified information

and must be filed with the attorney general. *Id.* § 24-10-109(3)(a). The CGIA further

specifies that a failure to comply with this notice requirement is "a jurisdictional

prerequisite to any action brought under the provisions of this article, and failure of

compliance shall forever bar any such action." *Id.*; *see also Trinity Broadcasting of*

*Denver, Inc. v. City of Westminster*, 848 P.2d 916, 922 (Colo. 1993). The Tenth Circuit

has held that these notice requirements "apply when federal courts hear Colorado tort

claims under supplemental jurisdiction." *Aspen Orthopaedics & Sports Med., LLC v.*

*Aspen Valley Hosp. Dist.,* 353 F.3d 832, 838 (10th Cir. 2003). "Colorado courts consistently hold that a plaintiff must plead compliance with the CGIA's notice provisions in the complaint to avoid dismissal." *Id.* at 840; *Kratzer v. Colo. Intergovernmental Risk Share Agency*, 18 P.3d 766, 769 (Colo. Ct. App. 2000) ("[A] claimant must allege in his or her complaint that the claimant has complied with the jurisdictional prerequisite of filing of a notice of claim.").

The 182-day period is triggered when the plaintiff discovered, or, through the exercise of reasonable diligence, should have discovered the wrongful act. *See Trinity Broadcasting*, 848 P.2d at 923. The Colorado Supreme Court has explained, "[t]he Governmental Immunity Act is not a tort accrual statute. It is a nonclaim statute, raising a jurisdictional bar if notice is not given within the applicable time period." *Id*. at 923. "While, under tort law, the concept of accrual encompasses both the discovery of the injury *and* the discovery of the cause of that injury . . . the Governmental Immunity Act notice period is triggered when a claimant has *only* discovered that he or she has been wrongfully injured." *Id*. (emphasis added) (internal citations omitted). Furthermore, in the context of state law claim for Wrongful Death, the cause of action begins to accrue on the date of death. Colo. Rev. Stat. § 13-80-108(2).

In the current matter, the wrongful injury occurred on the date of Ms. Cleveland's death, December 7, 2022. It does not matter if Plaintiffs did not yet have actual knowledge of all the underlying elements of their claim or the specific conduct of the Defendants that led to the injury. Therefore, in order to comply with the 182-day notice requirement, Plaintiffs were required to provide notice of their claims on or before June 7, 2023. However, according to the Amended Complaint, Defendants were only

provided with notice of Plaintiff's claim on August 18, 2023, via certified mail. ECF No. 47 ¶ 45. The notice provided on August 18, 2023, was over two months late and thus failed to comply with the CGIA's notice requirement.

In their Response, Plaintiffs argue that Mr. Cleveland, Ms. Cleveland's eighty-eight-year-old father living in South Carolina, was suffering from cancer and "had no way of knowing about the pattern of failures and customs of indifference that led to his daughter's untimely death." They further state that Mr. Cleveland was only appointed as Personal Representative of the Estate on August 10, 2023, and that "the tortious conduct complained of in Plaintiff's Complaint could not have been readily apparent to Mr. Cleveland within the statutory 182 days." ECF No. 129 at 4. In support of their argument, Plaintiffs cite to a string of cases for the proposition that the notice period should not begin to run until a personal or legal representative has been appointed. However, in each of those cases, the Plaintiff suffered a legal disability. *See Antonopoulos v. Town of Telluride,* 187 Colo. 392, 399, 532 P.2d 346, 350 (1975) (finding when plaintiff is a minor, notice period of the GIA begins to run when an individual, with knowledge of the injury that may be imputed to the plaintiff, is appointed to act on the incapacitated claimant's behalf); *Rojhani v. Arenson,* 929 P.2d 23, 26 (where child is not capable of appreciating his injury, notice period begins to run when guardian or personal representative is appointed on his or her behalf); *Cintron v. City of Colo. Springs,* 886 P.2d 291, 294 (involving plaintiff who was a minor). That Mr. Cleveland, as the personal representative of Ms. Cleveland's Estate, was eighty-eight years old, living in South Carolina, and was suffering from cancer does not constitute a legal disability. Therefore, the line of cases Plaintiffs cite is inapplicable here.

Accordingly, the Court finds that Plaintiffs have failed to comply with the notice requirement of the CGIA and therefore all the state law claims (Counts II, III, V, VI, VIII, IX, XI, XIII, XIV, XXI) should be dismissed with prejudice for lack of subject matter jurisdiction.

## IV.    RECOMMENDATION

In light of the foregoing, it is hereby **RECOMMENDED** that the ECSO Defendant Group's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), ECF No. 128, be **GRANTED IN PART** and **DENIED IN PART** as follows:

- As to the § 1983 municipal liability claim for failure to train, the Motion should be **DENIED.**

- As to the official capacity claims against Undersheriff Loya and Captain Van Wyk, the Motion should be **GRANTED**.

- As to any individual capacity claims against Sheriff Van Beek and Undersheriff Loya, the Motion should be **GRANTED**.

- As to any individual capacity claims against Captain Van Wyk, the Motion should be **DENIED**.

- As to the state law claims, the Motion should be **GRANTED**.

It is further **RECOMMENDED** that Defendants Deputy O'Neill[8] and Deputy Valdez' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), ECF No. 131, be **GRANTED IN PART** and **DENIED IN PART** as follows:

---

[8] The sole conduct alleged against Deputy O'Neill is that he conducted an initial suicide screening of Ms. Cleveland on October 25, 2022, and failed to include the information provided by Mr. Heinze regarding Ms. Cleveland's suicidality. Plaintiffs brought only state law claims against Defendant Deputy O'Neill.

- As to the official capacity claims against Deputy Valdez, the Motion should be **GRANTED**.

- As to the individual capacity claims against Deputy Valdez, the Motion should be **DENIED**.

- As to the state law claims, the Motion should be **GRANTED**.

It is further **RECOMMENDED** that Defendant Andrew Vigil's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), ECF No. 135, be **GRANTED IN PART** and **DENIED IN PART** as follows:

- As to the official capacity claims against Deputy Vigil, the Motion should be **GRANTED**.

- As to the individual capacity claims against Deputy Vigil, the Motion should be **DENIED**.

- As to the state law claims, the Motion should be **GRANTED**.


**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.**

*Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*,

91 F.3d 1411, 1412-13 (10th Cir. 1996).

Dated: September 23, 2025
      Denver, Colorado

N. Reid Neureiter
United States Magistrate Judge